UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

|  |  |  |
|---|---|---|
| MARTY HIERHOLZER, an individual, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:23-cv-24 |
| | ) | |
| SMALL BUSINESS ADMINISTRATION, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

Plaintiffs MJL Enterprises, LLC, and Marty Hierholzer allege that Section 8(a) of the Small Business Act ("Act") and related regulations are unconstitutional, in violation of the Fifth Amendment and nondelegation doctrine, and also that the Defendants violated the Administrative Procedure Act ("APA") when they promulgated regulations pursuant to Section 8(a) of the Act. Plaintiffs' claims all fail, and the Court should dismiss their Complaint in its entirety, because Plaintiffs lack standing and, as such, this Court does not have subject matter jurisdiction. Plaintiffs' claims that the Act violates the Fifth Amendment and the nondelegation doctrine also fail to state a claim upon which relief can be granted. Plaintiffs' facial claim that the Small Business Administration's ("SBA") regulations violate the Fifth Amendment similarly fails to state a claim. Additionally, Plaintiffs' claim that the statute and regulations diminishes their eligibility for the Section 8(a) program is untimely and should be dismissed for that reason as well.

**BACKGROUND**

**I.    Overview of the Section 8(a) Business Development Program**

Congress enacted the Small Business Act of 1953 ("the Act"), 15 U.S.C. § 631 *et seq.*, to "aid, counsel, assist and protect . . . the interests of small-business concerns in order to preserve

free competitive enterprise" and to ensure a "fair proportion" of government contracts go to small businesses. 15 U.S.C. § 631(a). The Act establishes several programs to aid small businesses, including requiring federal agencies to reserve certain contracts exclusively for small businesses. *Id.* § 644(j)(1). In addition to establishing contracting preferences and other programs for small businesses in general, the Act includes several programs that create contracting preferences for small businesses that satisfy certain criteria, including small businesses owned and controlled by women, *see id.* § 637(m); small businesses owned and controlled by service-disabled veterans, *id.* § 657f-1; and the program at issue here, which is for "socially and economically disadvantaged" small business concerns, *i.e.*, the Section 8(a) Business Development Program ("8(a) program"), *id.* § 637(a).

Through the 8(a) program, the SBA provides contract, financial, technical, and management assistance to promote the business development and competitive viability of eligible small businesses. *Id.* § 631(f)(2). Just as the Act authorizes the SBA to provide contracting assistance to small businesses in general, it also authorizes the SBA to enter into contracts with other federal agencies and to provide access to these contracts to 8(a) program participants. *See id.* at § 637(a)(1); 13 C.F.R. § 124.501(a). Contracts awarded through the 8(a) program may either be awarded competitively with other program participants or may be reserved for a particular firm (*i.e.*, sole source awards). 13 C.F.R. § 124.501(b). The Act does not include a quota, but instead creates the aspirational goal for the federal government to spend at least five percent of its contracting dollars with businesses owned by socially and economically disadvantaged individuals, with an overall goal of awarding at least 23 percent of the total value of all prime contracts in a fiscal year to small businesses in general. 15 U.S.C. § 644(g)(1)(A)(i), (iv). Socially

2

and economically disadvantaged businesses including those in the 8(a) program receive approximately 5-6% of the federal procurement budget every year. *See* Robert Jay Dilger and R. Corrine Blackford, Cong. Rsch. Serv., R44844, *SBA's "8(a) Program": Overview, History, and Current Issues* (2022) at pg. 35 Table 4 (https://sgp.fas.org/crs/misc/R44844.pdf) (visited Mar. 20, 2023).

Eligibility for the 8(a) program is limited to small businesses that are at least 51 percent unconditionally owned and controlled by one or more "socially and economically disadvantaged" individuals who are of good character and citizens of the United States, and which demonstrate a potential for success in competing in the private sector. *Id.* at § 637(a)(4)(A), (7)(A); 13 C.F.R. § 124.101. Socially disadvantaged individuals are defined as "those who have been subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group without regard to their individual qualities" and due to "circumstances beyond their control." 15 U.S.C. § 637(a)(5); 13 C.F.R. § 124.103(a). An SBA regulation provides that program applicants who are members of certain designated groups, including Black Americans, Hispanic Americans, Native Americans, Asian Pacific Americans, and Subcontinent Asian Americans, are entitled to a rebuttable presumption of social disadvantage. 13 C.F.R. § 124.103(b)(1). This presumption may be rebutted with "credible evidence to the contrary." *Id.* at § 124.103(b)(3). Individuals who are not members of one of these groups may demonstrate social disadvantage by submitting evidence that shows, by a preponderance of the evidence, that a distinguishing characteristic has contributed to substantial social disadvantage, which has limited their entry or advancement in the business world. *Id.* at § 124.103(c)(1)-(2).

Regardless of how social disadvantage is established, all applicants for the 8(a) program must meet the standard for economic disadvantage as well. An economically disadvantaged individual is one whose "ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities as compared to others in the same business area who are not socially disadvantaged." 15 U.S.C. § 637(a)(6)(A). In evaluating economic disadvantage, the SBA considers the personal financial condition of the individual claiming disadvantaged status, including income for the prior three years, personal net worth, and the fair market value of all assets. 13 C.F.R. § 124.104(c).[1]

Participation in the 8(a) program is limited to a maximum of nine years, 13 C.F.R. § 124.2, but participants will graduate from the program earlier if they meet certain business achievements. 13 C.F.R. § 124.302(a)(1)-(2). For example, businesses will graduate from the 8(a) program if they exceed certain size standards that correspond to their primary North American Industry Classification System ("NAICS") code. 13 C.F.R. § 124.302(c). In addition, program participants must certify annually that they continue to meet program requirements and provide financial and other information to allow the SBA to verify the participant's continued eligibility. 15 U.S.C. § 637(a)(4)(C), (6)(B); 13 C.F.R. § 124.112.

---

[1] For initial eligibility for the 8(a) program, an individual's average adjusted gross income generally cannot exceed $400,000 over the three years preceding the submission of the 8(a) application. *Id.* § 124.104(c)(3). An individual's net worth must be less than $850,000 for initial 8(a) program eligibility. *Id.* § 124.104(c)(2). Finally, the fair market value of an individual's assets must not exceed $6.5 million for initial 8(a) program eligibility. *Id.* § 124.104(c)(4). Ownership in the 8(a) business and equity in the individual's primary personal residence are included for purposes of valuing assets, but not for calculating net worth. 15 U.S.C. § 637(a)(6)(E); 13 C.F.R. § 124.104(c)(2).

## II.      Summary of Plaintiffs' Allegations

According to Plaintiffs' Complaint, Marty Hierholzer is the owner of MJL Enterprises, LLC, which is a government contractor that started providing government contracting services in 2006. ECF No. 1 at ¶¶ 2 and 14. Hierholzer is not a member of a group that, under its regulations, the SBA presumes is socially disadvantaged. *Id.* at ¶ 47. He submitted applications to the SBA for entry into the 8(a) program in 2009 and 2016 and SBA denied both applications. *Id.* at ¶¶ 54-55. He appealed the denial of his 2016 application and the SBA's Office of Hearings and Appeals affirmed the denial in 2017. *Id.* at ¶ 55. Hierholzer learned during this time period that the SBA found other individuals to be socially disadvantaged based on their race. *Id.* at ¶ 63.[2]

Plaintiffs allege that the Act and the regulations that comprise the 8(a) program harm them in two primary ways. First, Plaintiffs allege that they are on unequal footing when they apply for participation in the 8(a) program because of the race-conscious presumption of social disadvantage in the SBA's regulations, specifically 13 C.F.R. § 124.103(b), (hereafter "application harm"). *Id.* at ¶¶ 67-68. Second, Plaintiffs allege that they have suffered harm because they cannot compete

---

[2]   According to Hierholzer, he participates in the federal government's service-disabled veteran owned small business ("SDVOSB") program (ECF No. 1 at ¶ 25) which, like the 8(a) program, provides contracting assistance to eligible government contractors. *See* 13 C.F.R. § 128.101. Contracts placed into the SDVOSB program are either "sole sourced" to individual SDVOSBs or restricted to competition amongst only SDVOSBs and are thus unavailable to be set-aside in the 8(a) program. *Id.* Unlike the 8(a) program, the SDVOSB program does not require participants to establish that they are economically disadvantaged. 13 C.F.R. § 128.200(b). There is no order of preference for contracting officials as to which SBA program federal government small business contracting officers must use when taking small business contracts outside of full and open contracting. 13 C.F.R. § 125.2(f)(2)(i). The Veterans Administration previously administered the SDVOSB program but now SBA administers it. *See* https://www.sba.gov/federal-contracting/contracting-assistance-programs/veteran-contracting-assistance-programs (visited Mar. 20, 2023). The federal government annually aims to award 3% of all federal contracting dollars to SDVOSB's. *Id.*

for government contracts on equal footing with contractors in the 8(a) program (hereafter "competition harm"). *Id.*

Plaintiffs' Complaint includes five Claims for Relief. Claims I and II allege that the SBA's regulations and the Act violate the Fifth Amendment's Equal Protection Clause. Claims III and V allege that the SBA violated the APA because the regulations setting forth the race-conscious presumption of social disadvantage exceed statutory authority and are arbitrary and capricious. Claim IV alleges that the Act violates the APA because it is an unconstitutional delegation of authority to the SBA.

All of these Claims for Relief fail because Plaintiffs lack standing. Claim for Relief IV also fails to state a claim upon which relief can be granted because the Act does not violate the nondelegation doctrine. Additionally, Claims for Relief I and II fail to state a claim upon which relief may be granted because the Act and regulations do not violate the Fifth Amendment's Equal Protection Clause and, in any event, these Claims are untimely.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) governs the arguments addressed in Section I of the Argument portion of this brief because Plaintiffs lack standing to bring their claims. Under Rule 12(b)(1), a defendant may challenge subject matter jurisdiction in two ways, each of which supports dismissal here. First, a defendant can show that a complaint "simply fails to allege facts upon which subject matter jurisdiction can be based." *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (cleaned up). This is a "facial challenge" to subject matter jurisdiction. *Id.* For such challenges, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration where the complaint's allegations "are taken as true" and

courts must grant the defendant's motion if there are insufficient allegations "to invoke subject matter jurisdiction." *Id.* (cleaned up).

Second, the defendant may contend that the "the jurisdictional allegations of the complaint [are] not true." *Id.* (cleaned up). This is a "factual" challenge to subject matter jurisdiction. *Id.* For factual challenges, courts may go beyond the complaint's allegations and consider evidence to assess "if there are facts to support the jurisdictional allegations without converting the motion to a motion for summary judgment." *Id.* (cleaned up). As discussed below, Plaintiffs lack standing on both facial and factual grounds.

Federal Rule of Civil Procedure 12(b)(6) governs the arguments addressed in Sections II to V of the Argument portion of this brief because Plaintiffs Claims for Relief I, II, and IV fail to state claims upon which relief may be granted. When ruling on a 12(b)(6) motion, a court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 268 (4th Cir. 2022) (cleaned up). To survive a motion to dismiss under Rule 12(b)(6), a "plaintiff must plausibly allege facts that, if proven, would be sufficient to establish each element of the claim." *Harvey*, 48 F.4th at 269. Mere "conclusory statements" will not suffice. *Id.* at 269 (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## ARGUMENT

### I.     This Court Lacks Subject Matter Jurisdiction Because Plaintiffs Lack Standing

Federal courts are courts of "limited jurisdiction." *Just. 360 v. Stirling*, 42 F.4th 450, 458 (4th Cir. 2022) (cleaned up). "No matter how interesting or elegant a party's argument,  the federal courts have no power to breathe life into disputes" that come to them without such jurisdiction. *Id.*

(cleaned up). Among the "many jurisdictional questions" federal courts must consider, "standing is 'perhaps the most important.'" *Id.* (cleaned up). Article III standing is "part and parcel of the constitutional mandate" that the federal courts extend their power only to "cases and controversies." *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 252 (4th Cir. 2020); *see also* U.S. Const. art. III, § 2. This constitutional mandate therefore requires parties "invoking a federal court's jurisdiction to demonstrate standing." *Id.*

Article III standing requirements ensure that plaintiffs have a "personal stake in the outcome of the controversy." *Buscemi v. Bell*, 964 F.3d 252, 258 (4th Cir. 2020) (cleaned up). Strict enforcement of Article III standing is particularly important where, as here, a court is asked to rule on the constitutionality of action by the executive and legislative branches. *See Carpenter v. Barnhart*, 894 F.2d 401, 1990 WL 2314  (4th Cir. 1990) (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982)).

Article III standing has three elements: "(1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Buscemi*, 964 F.3d at 258 (cleaned up). Where, like here, a plaintiff seeks injunctive relief, the plaintiff satisfies the injury in fact element either by "demonstrating 'a sufficient imminent injury in fact' or by demonstrating 'an ongoing injury.'" *Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 922 (4th Cir. 2022) (cleaned up). At the pleading stage, it is the plaintiff who must "clearly . . . allege facts demonstrating" each element. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

Here, Plaintiffs lack standing because, on the face of their Complaint, they have not plausibly alleged any of the three elements that are required to establish Article III standing. Any

injury Plaintiffs complain of cannot be traced to the challenged actions of any of the Defendants. Nor would a favorable decision by the Court redress the speculative, vague harms Plaintiffs raise. Finally, they fail to sufficiently allege an injury in fact. For these reasons, the Court lacks subject matter jurisdiction over their claims.

A.   Plaintiffs Lack Standing Because They Have Not Plausibly Alleged Causation

To satisfy Article III's causation requirement for standing, a plaintiff must establish that there is "a causal connection between the injury and the [defendant's] conduct" at issue. *Disability Rts. S.C. v. McMaster*, 24 F.4th 893, 901 (4th Cir. 2022) (cleaned up). Plaintiffs "must be able to demonstrate that the alleged harm was caused by the defendant" rather than "the independent action of some third party not before the court." *Id.* (cleaned up); *see also Howard v. New Jersey Dept. of Service*, 667 F.2d 1099, 1101-02 (3d Cir. 1981) (holding no causation where female applicants for police officer were not hired because they failed the written exam and not the physical agility test they sought to invalidate).

Plaintiffs cannot plausibly trace their alleged injuries to the race-conscious presumption in SBA's regulations. They have not sufficiently pled that MJL can compete for the sought-after 8(a) program contracts in the first place even if the race-conscious presumption in the program were removed. Section 8(a) program participants must be economically as well as socially disadvantaged. The 8(a) program defines economically disadvantaged individuals as those with "diminished capital and credit opportunities as compared to others in the same business area who are not socially disadvantaged." 15 U.S.C. § 637(a)(6)(A); *see also* ECF No. 1 at ¶ 33. The SBA considers the individual's income for the prior three years, personal net worth, and the fair market value of all assets. 13 C.F.R. § 124.104(c). Likewise, initial eligibility for the 8(a) program includes

9

income and net worth restrictions, as well as restrictions on an individual's assets. *Id.* §§ 124.104(c)(2)-(4).

For example, in *SRS Technologies, Inc. v. Department of Defense*, the United States Court of Appeals for the Fourth Circuit considered a challenge, like here, to the race-conscious presumption in the 8(a) program. 1997 WL 225979, at *1 (4th Cir. 1997). The court observed that it was not plausible that SRS could participate in the 8(a) program because "its owner is a multimillionaire whose net worth exceeded SBA's guidelines for economic disadvantage by several orders of magnitude." *Id.* Because the economic disadvantage criteria were "race neutral," and the plaintiff failed to qualify based on this race neutral criteria, the court held that the plaintiff lacked standing to challenge the race-conscious presumption in the 8(a) program. *Id.*

Here, Plaintiffs fail to allege that Hierholzer is economically disadvantaged—despite it being a necessary criterion to participate in the 8(a) program. ECF No. 1 at ¶ 33; *see generally* ECF No. 1. While Plaintiffs allege that MJL is "legally recognized as a small business under the terms of the 8(a) Program," ECF No. 1 at ¶ 14, the requirements for qualifying as a small business and qualifying as economically disadvantaged are very different. *Compare* 13 C.F.R. § 121.201 (setting small business size standards by industry based on number of employees or annual receipts) *with* 15 U.S.C. § 637(a)(6)(A) (defining economic disadvantage as "socially disadvantaged individuals whose ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities"). The Complaint says nothing about whether Hierholzer currently suffers from diminished capital and credit opportunities.

Plaintiffs have thus failed to allege that MJL could qualify for the 8(a) program, even without the race-conscious presumption that Plaintiffs are challenging. Similar to the business

owner in *SRS Technologies*, Plaintiffs here have not plausibly alleged that MJL could participate in the 8(a) program because of a race neutral reason: the economic disadvantage criteria. *SRS,* 1997 WL 225979, at *1. As in *SRS Technologies*, therefore, Plaintiffs here lack standing. Nor have Plaintiffs plausibly alleged that they are socially disadvantaged in the absence of the race-conscious presumption.

What is more, Plaintiffs have already attempted to prove social disadvantage twice, per the Complaint, and been denied entry to the Section 8(a) program each time. ECF No. 1 at ¶¶ 54-55. In 2017, the SBA's Office of Hearings and Appeals affirmed the SBA's finding that Hierholzer is not socially disadvantaged, and the Complaint does not include any allegations that would yield a different result now, even in the absence of the race-conscious objection. *In the Matter of: MJL Enterprises, LLC, Petitioner*, SBA No. BDPE-566, 2017 WL 8231365 (Dec. 18, 2017).

Plaintiffs attempt to stitch together a causal connection between the race-conscious presumption and their allegedly unequal footing when they apply for participation in the 8(a) program, i.e., the application harm described above. ECF No. 1 at ¶¶ 67-68. They theorize that the presumption "makes it less likely that the SBA will grant 8(a) eligibility to MJL." *Id.* at ¶ 69. This theoretical application harm is pure speculation. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). The race-conscious presumption does not make it any more or less likely that SBA would grant 8(a) eligibility to MJL because, as discussed above, Hierholzer cannot show that he is economically or socially disadvantaged.

Plaintiffs further contend that, because of the race-conscious presumption, MJL cannot compete for contracts under the 8(a) program that it "could successfully procure and perform"

otherwise, i.e., the competition harm described above, is similarly flawed. *Id.* ¶ 70. These are not factual allegations entitled to the presumption of truth, but pure speculation. *See Twombly*, 550 U.S. at 555. In the absence of the race-conscious presumption, the 8(a) program would still exist. Plaintiffs—who, as discussed above, have failed, for reasons independent of the presumption, to plausibly allege eligibility to participate in the program—still, therefore, could not compete for contracts in the 8(a) program. The only way that the race-conscious presumption could cause this alleged competition harm, then, is if Plaintiffs could prove that fewer contractors would participate in the 8(a) program in the absence of the presumption. Plaintiffs make no such allegations. Nor could they, without speculating about what an alternative 8(a) program might look like without the presumption.

As a sister district court in the Fourth Circuit has observed, "it would be pure speculation for the Court to conclude that judicial removal of the presumption would diminish the number of DBE program eligible participants." *Interstate Traffic Control v. Beverage*, 101 F. Supp. 2d 445, 453 (S.D. W.Va. 2000) (concluding that plaintiff "failed to show that the presumption of disadvantage enjoyed by certain minorities under the DBE program is causally related to its alleged injury-in-fact, the inability to compete on an equal footing for 100% of" contracts in the field).[3] Here, too, Plaintiffs cannot establish causation because they fail to allege that MJL will compete

---

[3] In *Interstate Traffic Control*, the plaintiff business was challenging a federal contracting program that included certain racial and gender preferences similar to those in the 8(a) program. *Id*. at 447. Businesses that benefit from presumptions of disadvantage in that program, like those at issue in the 8(a) program, must still certify their disadvantage and the owner's personal net worth. *Id*. at 453. The court reasoned that unless those businesses were "fraudulently certifying disadvantage and fraudulently misrepresenting their net worth," it requires speculation to presume that the number of businesses participating—and consequently, MJL's competition—would change if the presumption of disadvantage is eliminated. *Id*.

against fewer companies qualifying for the Section 8(a) program if its presumption of disadvantage is eliminated.

To conclude, Plaintiffs cannot plausibly trace MJL's alleged injuries to the race-conscious presumption in the SBA regulation rather than MJL's own inability to meet the social and economic disadvantage criteria. *See Disability Rts. S.C.*, 24 F.4th at 901; *Harvey*, 48 F.4th at 268.

B. Plaintiffs Lack Standing Because a Favorable Decision Would Not Redress Plaintiffs' Alleged Injuries

Under the redressability element of standing, a plaintiff must show that the court "has the power to grant the plaintiff's requested relief, and that such relief would redress the plaintiff's injury." *Buscemi*, 964 F.3d at 259. A "speculative" showing is insufficient. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). At the pleading stage, the plaintiff must "clearly . . . allege facts demonstrating" each element. *Spokeo*, 136 S. Ct. at 1547.

Plaintiffs seek a declaratory judgment that the 8(a) program's race-conscious presumptions are unlawful and an injunction against Defendants prohibiting them from "employ[ing] a racial preference in presuming that race alone qualifies an individual as socially disadvantaged." ECF No. 1 at 12. But Plaintiffs fail to plausibly allege how this relief would redress their alleged injury for two reasons, which independently support dismissal. First, they fail to plausibly allege that MJL would be eligible for the 8(a) program if the Court eliminated the challenged race-conscious presumption. Second, Plaintiffs fail to plausibly allege that they would experience any beneficial change from the elimination of the presumption.

First, even if this Court invalidated the race-conscious presumption in the SBA regulation, the 8(a) program would remain operative without that presumption, and Plaintiffs would be in the exact place they are now. The rebuttable presumption is just one method for business owners to

qualify as socially disadvantaged. 13 C.F.R.§ 124.103(c)(l). Thus, if the Court were to grant Plaintiffs' requested relief, MJL would *still* have to demonstrate that Hierholzer is socially and economically disadvantaged to get into the 8(a) program. As described above, because Plaintiffs have not pled facts sufficient to plausibly allege that, absent the race-conscious presumption, they would be deemed socially or economically disadvantaged, they cannot show that striking down the presumption "would redress [their] injury" and allow them into the program. *Buscemi*, 964 F.3d at 259.

Second, even if Hierholzer was determined to be socially and economically disadvantaged, a favorable outcome for Plaintiffs in this case would not benefit them in any way. To demonstrate redressability, Plaintiffs must plead facts showing it is "likely" their injuries will "be redressed by a favorable judicial decision." *Bell*, 964 F.3d at 258 (quoting *Spokeo*, 136 S. Ct. at 1547). As explained above, Plaintiffs' contentions that the presumption "makes it less likely that the SBA will grant 8(a) eligibility to MJL" (the application harm) and that MJL cannot compete for contracts under the 8(a) program that it could otherwise "successfully procure and perform" (the competition harm) are pure speculation. ECF No. 1 at ¶¶ 69, 70; *see Lujan*, 504 U.S. at 560-61.

With respect to the alleged application harm, if the Court eliminated the race-conscious presumption in SBA's regulations, Plaintiffs would face the same eligibility requirements they face today. To be eligible for the 8(a) program, they would still need to prove that they are socially and economically disadvantaged. Thus, the relief that Plaintiffs seek would not help them become participants in the 8(a) program.

Plaintiffs' claim that eliminating the race-conscious presumption would redress their alleged competition harm is also speculative. As *Interstate Traffic* explained for a similar program,

14

removing the presumption at issue "would not alter the number or identity of socially and economically disadvantaged individuals eligible to participate" in the 8(a) program. *Interstate Traffic*, 101 F. Supp. 2d at 453. Plaintiffs here have failed to assert that program participants are failing to "truthfully certify[] social and economic disadvantage" or that the program suffers from any kind of fraud. *Id.* Without such an allegation, the program's impact on MJL's business "would continue unaltered." *Id.*

Plaintiffs here are similarly situated to the plaintiff in *Cache Valley Electric Co. v. Utah Department of Transportation*, 149 F.3d 1119, 1123-24 (10th Cir. 1998). In *Cache Valley*, the Tenth Circuit dismissed a contractor's equal protection challenge to a federal contracting program[4] for businesses owned by socially and economically disadvantaged individuals, which included certain racial and gender preferences. Similar to the 8(a) program, the program at issue in *Cache Valley* included size requirements measured by average annual gross receipts, and the plaintiff's gross revenues exceeded the statutory limit to qualify as a "small" business. *Id.* at 1121. The plaintiff there made the same argument Plaintiffs make here: that elimination of the challenged racial and gender preferences would result in the plaintiff procuring and performing more contracts. *Id.* at 1123. The Tenth Circuit disagreed, finding "it would be pure speculation to conclude that invalidating the allegedly unconstitutional preferences would ameliorate plaintiff's ability to compete in any way." *Id.* This was because the challenged race-conscious presumption is "severable from the rest of the DBE program and thus the program would remain viable even absent those preferences." *Id.* at 1123. The same is true for Plaintiffs' claim here because the 8(a)

---

[4] Like in *Interstate Traffic*, the federal contracting program at issue in *Cache Valley* was the Department of Transportation's DBE program. *Id.* at 1120.

15

program would continue without the race-conscious presumption and there is no reason to believe that the elimination of the presumption would lead to any change to the number of participants in the 8(a) program.

In short, Plaintiffs lack standing because, for multiple independent reasons, they have failed to plausibly allege that the relief they seek "would redress [their alleged] injury." *Buscemi*, 964 F.3d at 259.

### C. Plaintiffs Lack Standing Because They Have Not Plausibly Alleged an Injury in Fact

To establish an injury in fact, a plaintiff must plead an injury that is "concrete and particularized" and "actual or imminent." *Id.* at 258-59 (quoting *Lujan*, 504 U.S. at 560). Injuries that are "conjectural or hypothetical" are insufficient. *Id.* at 259 (quoting *Lujan*, 504 U.S. at 560). "Threatened" injuries "must be certainly impending," while "'[a]llegations of possible future injury' are insufficient." *Id.* (cleaned up). Similarly, the Supreme Court has explained that "[a]lthough imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending[.]" *Lujan*, 504 U.S. at, 564 n.2 (emphasis in original; cleaned up). Where, as here, a plaintiff challenges the constitutionality of a statute, the plaintiff must show that there is a "realistic danger" the plaintiff will suffer "a direct injury" because of "the terms of the statute." *Buscemi*, 964 F.3d at 259 (cleaned up). Furthermore, when a government contracting program that provides contracting preferences is at issue, courts look at whether the program prevents the plaintiff from competing "on equal footing in the bidding process" to evaluate injury in fact. *Interstate Traffic*, 101 F. Supp. 2d at 450 (*citing Ne. Fla. Chapter of the Assoc. Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993)).

*Interstate Traffic*, in which the court found that the plaintiff sufficiently pled an injury in fact, is instructive for its marked distinctions to this case. In *Interstate Traffic*, the plaintiff business was deemed ineligible for the DBE program and alleged that the program caused the business harm. *Id.* at 449. There was no dispute that the plaintiff business did not qualify for the DBE program because it did not meet the business size eligibility requirement. *Id.* at 450. The court reasoned that therefore, the only way the business could show an injury-in-fact was to allege that it had lost out on certain contracts due to the DBE program. *Id.* The business alleged that it "submitted the low subcontractor bid for traffic control on five federally-assisted highway construction projects." *Id.* at 450. And yet it lost all of them to a contractor participating in the program. *Id.* The court concluded that the business sufficiently pled injury-in-fact based on the alleged "lost business," which the court described as "the failure to receive contracts on which it was the low bidder." *Id.*

Here, by contrast, Plaintiffs fail to point to any specific loss of business and, thus, fail to sufficiently allege an injury in fact. Plaintiffs do not allege that MJL ever competed with an 8(a) program participant for a contract. Plaintiffs make no allegations that they submitted bids on federal projects, that they were the lowest bidder on any such bids, or that they failed to receive any contracts on such bids. Nor did Plaintiffs allege that they lost bids to an 8(a) program participant or that they lost business in any other way. *See Interstate Traffic*, 101 F. Supp. 2d at 450. Plaintiffs' failure to plausibly allege that MJL ever lost a contract bid because of the 8(a) program requirements at issue compels a finding that Plaintiffs fail to allege a "concrete" or an "actual or imminent" injury because of their exclusion from the 8(a) program. *Curtis v. Propel Property Tax Funding, LLC*, 915 F.3d 234, 240 (4th Cir. 2019) (cleaned up).

Without any lost contract bids to point to, Plaintiffs' alleged application and competition harms amount to claims of potential injury that is, at best, "conjectural," "hypothetical," or "abstract"—and insufficient to allege an injury in fact as required for standing. *Id.* (cleaned up). And of course, the conclusory allegation that MJL is "harmed" is also insufficient. ECF No. 1 at ¶ 74; *see Iqbal*, 556 U.S. at 678 (holding that courts are not "bound to accept as true a legal conclusion couched as a factual allegation"(cleaned up)). Plaintiffs' failure to allege cognizable harms are particularly curious in light of public records available on the System for Award Management (SAM.gov) Data Bank, which demonstrate that since 2006 MJL has encountered notable success in the federal government's service-disabled veteran owned small business program and participated in thousands of contract actions with federal government agencies totaling close to $130 million dollars. *See* Attachment A, MJL SAM.gov Records Request, and Attachment B, Declaration of Sam Le.[5]

Plaintiffs fare no better under *City of Jacksonville*. There, the plaintiff, an association of general contractors, challenged a Jacksonville set-aside program. *City of Jacksonville*, 508 U.S. at 658. The program required 10 percent of the amount the city spent on contracts be set aside for "Minority Business Enterprises (MBE's)." *Id.* (cleaned up). The only way a business could become an MBE was if 51 percent of its ownership was minority, as defined by ordinance, or female. *Id.* Jacksonville later replaced the ordinance with one available only to female or Black-

---

[5] Defendants offer this Declaration in support of a factual challenge to subject matter jurisdiction. For factual challenges, the Court may go beyond the Complaint's allegations and consider evidence to assess if there are facts supporting Plaintiffs' jurisdictional allegations. *Beck*, 848 F.3d at 270 (cleaned up). Here, Defendants contend that Plaintiffs' conclusory allegation that MJL is "harmed," ECF No. 1 at ¶ 74, is not true. The Declaration demonstrates that Plaintiffs are, in fact, not economically disadvantaged.

owned businesses. *Id.* at 661. The Court held that the plaintiff association suffered an injury in fact. *Id.* at 669. The Court repeatedly emphasized that the Jacksonville program was a "barrier" that completely prevented the plaintiff association from participating in the program. *Id.* at 666 (describing Jacksonville as "erect[ing] a barrier" and "impos[ing]" a "barrier" that "prevents" plaintiff from participating in the program). The complete bar on the plaintiff from bidding on contracts set aside for participants in Jacksonville's program was the plaintiff's injury. *Id.* Here, however, the race-conscious presumptions in the 8(a) program is no such barrier for this plaintiff. While the Jacksonville program only permitted minority and female-owned businesses, *id.* at 658 (and later, Black and female-owned businesses, *id.* at 661) to participate, the 8(a) program is not so narrow. As described above, the 8(a) program allows *anyone*, no matter their race or gender, to demonstrate social advantage by submitting evidence that a distinguishing characteristic has contributed to substantial social disadvantage, which has limited their entry or advancement in the business world. 13 C.F.R. §124.103(c)(1)-(2). According to the Complaint, Plaintiffs themselves took advantage of this opportunity twice—and failed both times. ECF No. 1 at ¶¶ 54-55. The 8(a) program is not the barrier causing Plaintiffs' injury. The barrier is Plaintiffs' own failure to demonstrate social disadvantage to the SBA.

In sum, Plaintiffs have failed to show that their asserted abstract injuries are "concrete," "imminent," or "certainly impending," and therefore they have no injury in fact. *Buscemi*, 964 F.3d at 258-59. Because Plaintiffs lack standing, the Court should dismiss their Complaint in its entirety.

## II.      Plaintiffs' Claim Under the Nondelegation Doctrine Lacks Merit

Claim IV of the Complaint alleges that the race-conscious presumption violates the APA because Congress unconstitutionally delegated authority to SBA "to make or enact racial classifications" and to "determine whether someone belongs to a particular minority group." ECF No. 1 at ¶ 109. The D.C. Circuit rejected this same claim in *Rothe Dev., Inc. v. United States Dep't of Def.*, 836 F.3d 57, 74 (D.C. Cir. 2016), and this Court should do so as well.

The nondelegation doctrine prohibits the delegation of authority from one branch of government to another in a way "that frustrates the constitutional design." *Kerpen v. Metro. Washington Airports Auth.*, 907 F.3d 152, 160–61 (4th Cir. 2018) (affirming order that granted motion to dismiss; cleaned up). Under the nondelegation doctrine, when Congress directs an agency to exercise its discretion or judgment, Congress must "clearly delineate[] the general policy, the public agency which is to apply it, and the boundaries of this delegated authority." *Mistretta v. United States,* 488 U.S. 361, 372-373 (1989). A statute that provides an "intelligible principle" to guide the agency's decisions does not violate the nondelegation doctrine; a violation is found only if the statute provides "literally no guidance." *Id.* at 372; *see also Whitman v. American Trucking Ass'ns,* 531 U.S. 457, 474 (2001) and *United States v. Moriello*, 980 F.3d 924, 932 (4th Cir. 2020). Thus, the "government does not bear an onerous burden in demonstrating the existence of an intelligible principle." *S. Carolina Med. Ass'n v. Thompson*, 327 F.3d 346, 350 (4th Cir. 2003). "Only the most extravagant delegations of authority, those providing no standards to constrain administrative discretion, have been condemned by the Supreme Court as unconstitutional." *Humphrey v. Baker,* 848 F.2d 211, 217 (D.C. Cir. 1988). Indeed, "[o]nly twice in this country's history (and that in a single year)" has the Supreme Court

20

"found a delegation excessive—in each case because 'Congress had failed to articulate *any* policy or standard' to confine discretion." *Gundy v. United States*, 139 S. Ct. 2116, 2129 (2019) (emphasis not added).

This case does not present one of those rare occurrences where Congress violated the nondelegation doctrine. Congress provided SBA with an intelligible principle for how it could determine which individuals qualify for the 8(a) program. Language in 15 U.S.C. § 637(a)(5) sets forth the definition of "socially disadvantaged individuals" to assist SBA in identifying appropriate program participants. *Rothe*, 836 F.3d at 454. Similarly, the language in 15 U.S.C. § 631(f)(1) states the findings made by Congress in enacting the 8(a) program and expresses the policy behind the program, both of which serve to guide SBA in its implementation of the 8(a) program. The SBA's authority to designate groups is further informed by the examples of such racial groups, 15 U.S.C. § 631(f)(1)(C), which Congress has found have suffered the effects of discriminatory practices or similar invidious circumstances over which they have no control, 15 U.S.C. § 631(f)(1)(B), and by the purpose of the Act to promote the business development of small businesses owned by socially and economically disadvantaged individuals, 15 U.S.C. § 631(f)(2)(A).

These provisions in the Act provide far more guidance to SBA than principles the Supreme Court has found adequate in statutes that merely authorize regulation in the "public interest," in a way that is "fair and equitable," in a manner "requisite to protect the public health," and when "necessary to avoid an imminent hazard to the public safety." *Rothe*, 836 F.3d at 74. The Act also provides far more guidance to SBA than another statute the Fourth Circuit recently upheld against a nondelegation challenge, which simply authorizes federal agencies to promulgate "regulations

necessary for the protection and administration of property owned or occupied by the Federal government and persons on the property." *Moriello*, 980 F.3d at 933. For these reasons, Plaintiffs' Claim IV should be dismissed pursuant to Rule 12(b)(6) because it fails to state a claim upon which relief may be granted.

## III.    Plaintiffs' Facial Equal Protection Challenge to the Act Lacks Merit

Plaintiffs' claim that the Act violates the Fifth Amendment's Equal Protection Clause[6] on its face lacks merit because the Act only needs to satisfy rational basis review, and it easily does. Statutes that do not classify individuals based on race or other suspect categories only need to satisfy rational basis review, which requires courts to merely assess whether the statute has a "rational relation to some legitimate end." *Van Der Linde Hous., Inc. v. Rivanna Solid Waste Auth.*, 507 F.3d 290, 293 (4th Cir. 2007). By contrast, when a statute classifies individuals based on race, courts apply strict scrutiny to equal protection challenges and analyze whether the statute serves a compelling government purpose and is narrowly tailored to achieve that purpose. *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995).

In *Rothe*, the D.C. Circuit held that Section 8(a) of the Act does not on its "face classify individuals by race" and instead it uses "facially race-neutral terms of eligibility to identify individual victims of discrimination, prejudice, or bias, without presuming that members of certain racial, ethnic, or cultural groups qualify as such." 836 F.3d at 62. The *Rothe* court held that because the Act focuses on benefiting individuals who have experienced discrimination, as opposed to benefiting all individuals of certain races, it does not have to satisfy strict scrutiny. *Id.* at 64. As

---

[6] Plaintiffs' allegation that the Act violates the Fifth Amendment's Equal Protection Clause is found in paragraphs 76 and 93 of the Complaint.

such, the *Rothe* court applied rational basis review to assess the equal protection challenge to the Act. *Id.* at 72-73.[7]

The *Rothe* court held that the Act "plainly" satisfies rational basis review because it "bears a rational relation to some legitimate end." *Id.* at 73 (cleaned up). The Act "aims to remedy the effects of prejudice and bias that impede business formation and development and suppress fair competition for government contracts," which is clearly a legitimate end. *Id.* The Act is also rationally related to that end because it provides the benefits that "socially and economically disadvantaged individuals most need to participate on fair terms in the national economy." *Id.*[8] This Court should follow the sound reasoning of the *Rothe* court and dismiss Plaintiffs' claim that the Act violates the Fifth Amendment's Equal Protection Clause.[9]

## IV.   Plaintiffs' Facial Equal Protection Challenge to the Regulations Lacks Merit

The Court should also dismiss Plaintiffs' claim that the race-conscious presumption in the SBA's regulations facially violates the Fifth Amendment's Equal Protection Clause. A facial constitutional challenge is "the most difficult challenge to mount successfully, since the challenger

---

[7] SBA's regulations, in contrast, do classify individuals based on race. 13 C.F.R. § 124.103(b)(1). This section of the United States' motion only relates to Plaintiffs' challenge to the Act. Plaintiffs' challenge to the regulations is discussed below. *See* Section IV *infra*.

[8] The *Rothe* court relied on legislative history to make its findings on the Act's aims and its relation to those aims. A court may consider such legislative history when ruling on a motion to dismiss under Rule 12(b)(6). *Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693, 711 fn. 17 (D. Md. 2013) (legislative history was subject to judicial notice under Rule 12(b)(6)).

[9] The United States took the position in the briefing in *Rothe* that the Act was subject to strict scrutiny. The United States took this position against the backdrop of the D.C. Circuit's decision in *DynaLantic Corp. v. Department of Defense*, in which the court cast doubt on the United States' argument that the Act "is not itself race-conscious." 115 F.3d 1012, 1017 (D.C. Cir. 1997) (*DynaLantic I*). In light of the decision in *Rothe*, the United States' position in this litigation is the same as it was in connection with *DynaLantic I* – the Act itself does not classify based on race. Thus, the Act should be subject to only rational basis review.

must establish that no set of circumstances exists under which the [challenged government action] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Thus, a plaintiff that asserts a facial constitutional challenge "bears a heavy burden" and must show that the challenged law "cannot operate constitutionally under any circumstance." *H.B. Rowe Co. v. Tippett*, 615 F.3d 233, 243 (4th Cir. 2010) (applying *Salerno* test in equal protection case). When the government uses racial classifications in a statute or regulation in order to counteract race discrimination or its lingering effects – as the SBA did with the race-conscious presumption in 13 C.F.R. § 124.103 – the plaintiff must show that the government did not have a "strong basis in evidence" to find it "necessary or appropriate" to use the challenged racial classifications "under any circumstances." *DynaLantic Corp. v. U.S. Dep't of Def.*, 885 F. Supp. 2d 237, 271 and 274 (D.D.C. 2012) (*DynaLantic II*).

In *DynaLantic II*, the court examined the same facial challenge to the 8(a) program that the Plaintiffs have raised here – and the court rejected the challenge. 885 F. Supp. 2d at 279. The *DynaLantic II* court examined the "extensive statistical and anecdotal evidence" that Congress compiled and held that this evidence supported the government's claim that it had a "strong basis in evidence" to justify the use of race-conscious measures to further the compelling interest of "breaking down barriers to minority business development created by discrimination and its lingering effects." *Id.* at 270 and 273-74. The court correctly held that, to prevail, the plaintiff had to show that there was no strong basis in evidence to believe that race discrimination or its lingering effects existed in "any sector or industry in the economy." *Id.* at 271.

The Complaint in this case contains no allegations that would plausibly lead to a different result than the court reached in *DynaLantic II*. Plaintiffs have not pled sufficient facts to plausibly

allege that there are "no set of circumstances" that would justify the race-conscious presumption in the SBA's regulations. *Id.* at 271. Nor have they plausibly alleged that no sector or industry in the economy suffers from the problems of race discrimination or its lingering effects. They have, in fact, made no allegations about the economy as a whole apart from, perhaps, conclusory statements, which are insufficient to defeat a motion to dismiss. Thus, this Court should dismiss Plaintiffs' facial challenge to the SBA's regulations.

**V.      Plaintiffs' Claim for Relief based on its Eligibility for the 8(a) Program is Untimely**

The Court should dismiss Plaintiff's first claim for relief, *see* ECF No. 1 at ¶¶ 76-90, insofar as that claim is based on MJL's eligibility to participate in the 8(a) Program because Plaintiffs did not file this suit within the applicable statute of limitations. Because there is no statutory cause of action supporting Plaintiffs' claim, they must rely on a cause of action implied from the Constitution. *See e.g., Bell v. Hood*, 327 U.S. 678, 684 (1946) and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389 (1971). Because the Constitution does not provide for a specific statute of limitations, courts look to state law for the statute of limitations of the most analogous state law claim and apply that limitation period. In Virginia, the statute of limitations for an implied Constitutional claim is two years. *Kirchhoff v. United States Gov't*, No. 7:18CV00489, 2019 WL 1930134, at *4 (W.D. Va. Apr. 30, 2019), *aff'd,* 788 F. App'x 193 (4th Cir. 2019) and *Bloch v. Exec. Off. of the President*, 164 F. Supp. 3d 841, 860 fn. 27 (E.D. Va. 2016).

Federal law dictates when the two-year statute of limitations begins to run, i.e., when a cause of action accrues. "Under federal law a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action."

*Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951, 955 (4th Cir. 1995). For a cause of action to accrue, the plaintiff must know "that he has been hurt and who inflicted the injury." *Id.* This general rule applies to constitutional claims challenging the continued enforcement of a statute. *See Bird v. Dep't of Human Svcs.*, 935 F.3d 738, 744-46 (9th Cir. 2019) (discussing Fourth Circuit case law). For example, in *Johnson v. Jessup*, the plaintiffs filed an equal protection challenge to a state statute that required the revocation of individuals' drivers licenses if they did not pay certain fines. 381 F. Supp. 3d 619, 623 (M.D.N.C. 2019). The *Johnson* court dismissed some of the plaintiffs' claims as untimely because, even though they continued to suffer harm from the statute within the limitations period, the state revoked their licenses outside of the limitation period. *Id.* at 636.

When it is clear from the facts alleged in the complaint that a claim is time-barred, a court may dismiss it pursuant to Rule 12(b)(6). *Nasim*, 64 F.3d at 955. Plaintiffs' Complaint indicates that any claim for relief based on MJL's eligibility for the 8(a) program should have been filed by 2019. *See* ECF No. 1 at ¶ 76. Plaintiffs' alleged harms flow from SBA's denial of their applications to the 8(a) program because if the SBA had approved their applications, they would be "standing on equal footing" as all other 8(a) program participants. *Id.* at ¶ 67. According to Plaintiffs, Mr. Hierholzer applied for the 8(a) program in 2009 and 2016, and his 2016 application was ultimately denied in 2017, after he exhausted his appeals. *Id.* at ¶¶ 54-55. Because Plaintiffs knew that the Defendants had deemed them ineligible for the 8(a) program in 2017, Plaintiffs' challenges based on their ineligibility had to be filed by 2019, when the two-year statute of limitations expired. But Plaintiffs chose to sit on their rights after the denial of their application and, therefore, Claim I

based on Plaintiff's harm from its denial of eligibility for the 8(a) program should therefore be dismissed.

**Conclusion**

The Court should dismiss Plaintiffs' Complaint in its entirety because Plaintiffs lack standing or, in the alternative, it should dismiss Plaintiffs' Complaint in part for the other reasons discussed above.

Date: March 20, 2023

Respectfully submitted,

KAREN D. WOODARD
Chief
Employment Litigation Section
Civil Rights Division
United States Department of Justice

ANDREW BRANIFF (IN Bar No. 23430-71)
Deputy Chief

By: /s/ Allan K. Townsend
Allan K. Townsend (ME Bar No. 9347)
Ejaz H. Baluch, Jr. (MD Bar No. 1612130032)*
Trial Attorneys
Employment Litigation Section
Civil Rights Division
United States Department of Justice
150 M Street, N.E.
Washington, D.C. 20002
(202) 353-5343
Allan.Townsend2@usdoj.gov
Ejaz.Baluch@usdoj.gov
* Notice of Appearance will be filed once Court grants access to ECF system.

JESSICA D. ABER
UNITED STATES ATTORNEY

/s/ Virginia L. Van Valkenburg
Virginia L. Van Valkenburg

Assistant United States Attorney
Virginia State Bar No. 33258
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Tel: (757) 441-3217
Fax: (757) 441-6689
Virginia.VanValkenburg@usdoj.gov

## CERTIFICATE OF SERVICE

    I certify that I served the foregoing document on all counsel of record via the Court's electronic filing system on the date below.

Date: March 20, 2023               /s/ Allan K. Townsend

28