UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| MARTY HIERHOLZER, an individual, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MJL ENTERPRISES, LLC, a Virginia corporation | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:23-cv-24 |
| | ) | |
| SMALL BUSINESS ADMINISTRATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**

The Small Business Act's Section 8(a) Business Development Program ("8(a) program"), challenged here, allows the government to prioritize the issuance of certain contracting opportunities to businesses owned by "socially and economically disadvantaged" individuals. The statute defines socially disadvantaged individuals as "those who have been subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group without regard to their individual qualities." The Small Business Administration's ("SBA") regulation provides that applicants to the 8(a) program from certain designated racial or ethnic groups receive a rebuttable presumption of social disadvantage but also provides that any citizen of any race or ethnicity can obtain socially disadvantaged status. All of the courts that have reviewed this regulation on a facial challenge have found it to be constitutional.

While Plaintiffs are correct that the challenged regulations (but not the statute) are subject to strict scrutiny, that fact has no bearing on Plaintiffs' standing. And here, Plaintiffs have failed

to allege facts that would establish any of the elements of standing: injury in fact, causation, or redressability. Plaintiffs have failed to identify any contracts that they would be better able to compete for absent the presumptions in the 8(a) program. Plaintiffs have not established that Hierholzer can qualify as socially disadvantaged absent the presumptions or meets the race-neutral requirement of economic disadvantage and, as such, the race-conscious presumption has not caused Plaintiffs' alleged injuries. Furthermore, the relief Plaintiffs seek would not redress any of their alleged injuries because they would face the same barriers to entry into the 8(a) program that they do today and any competition they currently face from 8(a) program participants would not change. For these reasons, discussed in more detail below, Plaintiffs have failed to establish any of the three elements required for standing and their Complaint should be dismissed.

I.      **This Court Lacks Subject Matter Jurisdiction Because Plaintiffs Lack Standing.**

A.   Plaintiffs Lack Standing Because They Have Not Plausibly Alleged an Injury in Fact.

Plaintiffs allege that the presumptions in the 8(a) program create a "'barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group.'" ECF No. 26 at 12. Specifically, Plaintiffs allege that the race-conscious presumption puts them on unequal footing when applying for the 8(a) program (hereafter called "application harm") or, separately, when competing with 8(a) participants for contracts (hereafter called "competition harm"). Neither of these theories bears fruit. Plaintiffs fail to allege that they are able and ready to bid on any Section 8(a) program contracts. And the harms that Plaintiffs are purportedly suffering are too speculative to constitute an injury in fact.

1.   Plaintiffs' reliance on *City of Jacksonville* is misplaced.

Plaintiffs rely heavily on *Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville, Florida*, 508 U.S. 656 (1993) (*City of Jacksonville*), to contend that they have plausibly alleged an injury in fact. In *City of Jacksonville*, an association alleged

that "its members regularly bid on construction contracts in Jacksonville, and that they would have bid on contracts set aside pursuant to the city's ordinance were they so able." *City of Jacksonville*, 508 U.S. at 658. The Court in *City of Jacksonville* held that to allege an injury in fact in a context like this one, a plaintiff must "demonstrate that it is able and ready to bid on contracts and that a discriminatory policy prevents it from doing so on an equal basis." *City of Jacksonville*, 508 U.S. at 666.[1]

First, Plaintiffs reliance on *City of Jacksonville* is misplaced because the "discriminatory policy" is not analogous. The presumptions in the Section 8(a) program function differently than the complete set-aside program for only minority contractors at issue in *City of Jacksonville*. The Section 8(a) program's presumptions do not operate as a complete bar to participation in the Section 8(a) program and to compete for contracts. As Plaintiffs point out, hundreds of current Section 8(a) participants did not qualify based on the race-conscious presumptions; they applied to SBA based on their personal narratives and were granted designation of "social disadvantage." ECF No. 26 at 6, n.3.

In addition, *City of Jacksonville* and its progeny do not control because Plaintiffs here have failed to allege that they are "ready and able" to bid on 8(a) contracts. In *City of Jacksonville*, the plaintiff alleged that "many of its members regularly bid on and perform construction work for the City of Jacksonville" and that they "would have bid" on contracts in the set aside program they challenged "were they so able." 508 U.S. at 668. Likewise, in *Cache Valley Electric Co. v. Utah Department of Transportation*, 149 F.3d 1119, 1123 (10th Cir. 1998), the plaintiff alleged "it will continue to apply" for electrical subcontracts in competition with participants of the challenged

---

[1] The discriminatory policy in question was an ordinance entitled "Minority Business Enterprise Participation," which required that 10% of the amount spent on city contracts be set aside each fiscal year for "Minority Business Enterprises" (MBE's). *Id.* at 658.

program. In another case Plaintiffs rely upon, *Adarand Constructors v. Pena*, the plaintiff demonstrated that it bids on "every guardrail project in Colorado," that the defendant was likely to award at least one such contract in Colorado, and that the plaintiff was "very likely to bid on each such contract." 515 U.S. 200, 212 (1995). Finally, Plaintiffs cite *Gratz v. Bollinger*, where the plaintiff alleged that he was ready to apply as a transfer student to one of the defendants, the University of Michigan, if it stopped using race in its admissions process. 539 U.S. 244, 262 (2003). In each of these cases, the plaintiffs alleged that they were "ready" to participate in the program they challenged.

In *DynaLantic Corp. v. United States Department of Defense*, the plaintiff identified a specific contract (a mobile flight simulator for the "Huey" helicopter) that was placed in the 8(a) program. 885 F. Supp. 2d 237, 246-48 (D.D.C. 2012). The plaintiff, which designed and manufactured flight simulators for the military, and had military contracts to do that exact work, claimed it would have competed for that procurement but could not apply because it was not a participant in the Section 8(a) program. *Id.* at 246. These are the type of allegations that a plaintiff must make to demonstrate standing.

Based on these precedents, Plaintiffs here should assert the following to successfully allege standing: (1) they bid on and perform under contracts of the kind that are open to 8(a) program participants, *City of Jacksonville*, 508 U.S. at 668; they would have bid on contracts in the 8(a) program if admitted into the program, *id.*; (2) they will apply in the future for contracts in competition with 8(a) program participants, *Cache Valley*, 149 F.3d at 1122; (3) information about the bids such as when or where such bids might take place, *Adarand*, 515 U.S. at 212; and (4) specific contracts that have been placed into the program that they would have performed, *Dynalantic*, 885 F. Supp. at 246.

4

A recent district court decision illustrates plaintiffs' burden in cases like this one.[2] In *Bruckner v. Biden*, the plaintiff challenged a federal contracting program that included certain racial and gender preferences similar to those in the 8(a) program. __ F. Supp. 3d __, 2023 WL 2744026, at *2 (M.D. Fla. Mar. 31, 2023). The plaintiffs only made "broad allegations" that they are "qualified, willing, and able" to be a contractor under the challenged program and "can fulfill transportation and infrastructure-related contracts." *Id.* at *4. The court concluded that the plaintiffs failed to sufficiently plead that they were able to bid on the relevant contracts under *City of Jacksonville*. *Id.* at *4-5. The court found that the complaint contained "no allegations regarding Bruckner's expertise, Bruckner's prior experience, PMC's practical capabilities as a company, or any detail regarding the kinds of contracts that the Plaintiffs would like to pursue" under the program at issue. *Id.* at *5. Similarly, the court pointed out that the plaintiffs had "not yet decided on what contracts they [would] bid" if they succeeded in their suit, nor did they "know where they will bid on contracts." *Id.* The court concluded that without such allegations, it was "implausible," under *City of Jacksonville*, that the plaintiffs were able to make bids as participants in the challenged program. *Id.* at *4-5.

Plaintiffs here rely on similarly broad, speculative allegations. Similar to the *Bruckner* plaintiffs' allegation that they were "qualified, willing, and able" to be a contractor under the challenged program, Plaintiffs here simply allege that they "could successfully procure and perform" contracts in the 8(a) program. *Id.* at *4; ECF No. 1 at ¶ 70. Plaintiffs also make no allegations about MJL's "practical capabilities as a company," "the kinds of contracts" Plaintiffs would pursue if admitted into the 8(a) program, on what contracts they would bid, or where they

---

[2] Like in *Interstate Traffic* and *Cache Valley*, the federal contracting program at issue in *Bruckner v. Biden* was the Department of Transportation's DBE program. *Bruckner*, 2023 WL 2744026, at *2.

will bid. *See Bruckner*, 2023 WL 2744026, at \*5. Plaintiffs' military background and the general description of MJL's services shed no light on the company's ability to bid on 8(a) contracts open to 8(a) program participants. *See* ECF No. 1 at ¶¶ 14–16, 20–22. Plaintiffs have thus failed to satisfy the standard set forth in *City of Jacksonville*.

### 2.   Plaintiffs fail to plausibly plead application harm.

Plaintiffs also allege that they are injured by a "lack of *opportunity* to compete on an equal footing" for participation in the 8(a) program. ECF No. 1 ¶¶ 67-68. But 8(a) program applicants do not compete against one another like college applicants.[3] There is no cap on the number of 8(a) program participants, and every applicant who meets the eligibility requirements can enter the 8(a) program. If Hierholzer's applications demonstrated that he had been "subjected to racial or ethnic prejudice or cultural bias because of [his] identity as a member of a group without regard to [his] individual qualities," he would have been granted "socially disadvantaged" status by the SBA. 15 U.S.C. § 637(a)(5).

### 3.   Plaintiffs only plead the mere possibility of a competition harm.

Plaintiffs also fail to plausibly allege more than the mere possibility of their alleged competition harm. Plaintiffs fail to allege the denial of equal treatment here, *see City of Jacksonville*, 508 U.S. at 666, because they have not identified contracts in the 8(a) program that they could have performed that were awarded to 8(a) program participants who benefited from a race-conscious presumption. For example, in *Bruckner*, the plaintiffs challenged a program that encouraged contractors to consider race or gender when awarding the contract. *Bruckner*, 2023 WL 2744026, at \*7. Other contractors, however, awarded contracts through race-neutral criteria. *Id.* The court reasoned, therefore, that the plaintiffs failed to allege that "they are ready and able

---

[3] It is for this reason that Plaintiffs reliance on *Grutter v. Bollinger*, 539 U.S. 306, 317 (2003) is misplaced as well.

to bid on an identified contract or set of contracts" that use race-conscious criteria. *Id.* The court thus concluded that the plaintiffs "only allege the possibility of future harm, not an actual or imminent one." *Id.* This was true even if it was "statistically more likely than not" that the plaintiffs were bidding on contracts that used the race-conscious criteria they were challenging. *Id.* As long as plaintiffs "refus[e] to identify which contracts" that use race-conscious criteria they are "ready and able to compete for," they "fail to allege facts demonstrating" the denial of equal treatment under *City of Jacksonville*. *Id.*

The instant case is similar because, as Plaintiffs concede, many firms participating in the 8(a) program did not benefit from the race-conscious presumption. ECF No. 26 at 6 n.3. Firms owned by white individuals can—and do—gain entry into the 8(a) program. *See* 13 C.F.R. § 124.103(c)(1)-(2). Plaintiffs do not allege that they are "ready and able to bid on an identified contract, or set of contracts" in competition with only participants in the 8(a) program who benefited from the race-conscious presumption. *Id.* Plaintiffs therefore only allege the possibility of future competition harm, "not an actual or imminent one." *Id.* Even if it was "statistically more likely than not" that Plaintiffs were competing with firms that benefited from the race-conscious presumption, that is insufficient to show that such competition is "imminent" or "certainly impending," which is what the Fourth Circuit requires for the injury in fact element. *Buscemi v. Bell*, 964 F.3d 252, 258-59 (4th Cir. 2020) (quoting *Lujan, v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) then *Whitmore v. Ark.*, 495 U.S. 149, 158 (1990)).

The Complaint contains no allegations characterizing the contracts Plaintiffs lost, or how many contracts, or in what industries those contracts arose. ECF No. 26 at 11. Instead, Plaintiffs rely on a conclusory statement in their brief that MJL would have performed on 8(a) program contracts. *Id.* When courts assess factual challenges to standing, like Defendants' challenge here,

they apply the same standard that applies to summary judgment motions and, thus, conclusory statements are insufficient. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) and *Bandy v. City of Salem*, 59 F.4th 705, 709-10 (4th Cir. 2023). Therefore, Plaintiffs' conclusory claim in their brief does not satisfy their burden to establish an injury-in-fact.

    B.   <u>Plaintiffs Lack Standing Because They Have Not Plausibly Alleged Causation.</u>[4]

    The instant Complaint fails to adequately plead causation. Plaintiffs' Response to the Motion to Dismiss and the Hierholzer Declaration cannot be used to cure that deficiency. Even if this Court were to consider those documents, they do not establish economic disadvantage.

    1.   <u>Plaintiffs' failure to plausibly allege economic disadvantaged status is dispositive for Defendants' facial challenge to standing.</u>

    Plaintiffs' argument that the Complaint need not allege that Hierholzer is economically disadvantaged, *see* ECF No. 26 at 12, is irreconcilable with *SRS Technologies, Inc. v. Department of Defense*, 1997 WL 225979, at *1 (4th Cir. 1997). That case also involved a challenge to the race-conscious presumption in the 8(a) program. The Fourth Circuit found that SRS lacked standing because the company could not participate in the 8(a) program since its owner was not economically disadvantaged. *Id.* The court reasoned that the race neutral economic disadvantage requirement, not race, was dispositive for SRS's application. *Id.* Plaintiffs here similarly fail to allege economic disadvantage in the Complaint even though that requirement is foundational to participation in the 8(a) program. While *SRS Technologies* is not binding on this Court, the case holds substantial persuasive value due to the closely analogous factual and legal posture of the two cases. *See SRS Techs.*, 1997 WL 225979, at *1 ("SBA's requirement of economic disadvantage

---

[4] Throughout their memorandum of law, Plaintiffs refer to the causation element as traceability. Traceability is synonymous with causation. *See Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 760 (4th Cir. 2018).

for entry into the 8(a) Program is a race-neutral criterion. It was by virtue of this race-neutral criterion that plaintiff failed to qualify for a contract award, and its standing to challenge the race-conscious criteria is therefore lacking.").

> 2. <u>The Hierholzer Declaration fails to establish that Hierholzer is economically disadvantaged.</u>

Rather than amend their complaint, Plaintiffs offer a declaration wherein Hierholzer claims that he believes he is economically disadvantaged. *See* ECF 26-1. Even if the assertions in the declaration are accepted as accurate, the Hierholzer declaration does not sufficiently establish that Hierholzer is economically disadvantaged.

Hierholzer only offers conclusory statements that his net worth, adjusted gross income, and assets are lower than the benchmarks listed in 13 C.F.R. §§ 124.104(c)(2), (c)(3), and (c)(4). Such statements, without any supporting evidence, are insufficient to withstand an adequately supported factual challenge to standing. *See Brandy*, 59 F.4th at 710. Even assuming those conclusory statements are true, which Defendants do not concede, an individual may still fail to qualify as economically disadvantaged based on the program's additional requirements for economic disadvantaged status listed in 13 C.F.R. §§ 124.102(b) and 124.102(c)(1). Section 124.102(b) requires 8(a) program applicants to submit a narrative and "personal financial information." Section 124.102(c)(1) lists transfers to immediate family members within the previous two years as one factor that the Small Business Administration ("SBA") considers when evaluating economically disadvantaged status. The declaration does not reference § 124.102(b) or § 124.102(c)(1), though Hierholzer maintains that he "believe[s]" he is an "economically disadvantaged individual" under § 124.102 overall. ECF No. 26-1 at ¶ 3. A subjective conclusory belief about meeting the requirements overall is insufficient to establish economically

disadvantaged status under the 8(a) program's requirements. *See generally*, § 124.102. The declaration therefore fails to support any claim of economic disadvantage.

C.  Plaintiffs Lack Standing Because a Favorable Decision Would Not Redress Plaintiffs' Alleged Injuries.

Plaintiffs' argument regarding redressability amounts to a conclusory assertion that if the presumption in the 8(a) program were removed, Mr. Hierholzer's injury would disappear.[5] The reality is that an injunction in this case could not cure Mr. Hierholzer's alleged injuries. Even if the Court eliminated the presumption, the 8(a) program would remain operative because the presumption is severable from the rest of the 8(a) program. *See Cache Valley*, 149 F.3d at 1123 (holding that the bulk of a contracting preference program would remain because the race-conscious presumption is severable from the rest of the program). Win or lose this case, Plaintiffs will be in the exact place they are now.[6] If an injunction is entered, both minority and non-minority applicants will apply for the 8(a) program without the presumption in place. But Plaintiffs have already done exactly that: they applied for socially disadvantaged status twice before and were denied. And the increased burden on minority applicants would have no bearing on any hypothetical 8(a) program application from Plaintiffs because different applicants do not complete against one another. In short, winning this case would do nothing to lead to a different result for Plaintiffs. *See* ECF No. 20 at 11.

---

[5] Plaintiffs also for the first time suggest the Court could "extend the presumptions [so that] MJL would be presumptively eligible to participate in the 8(a) Program." ECF No. 26 at 14, n.6. This Court should disregard Plaintiffs' suggestion as irreconcilable with their request that the Court "[p]ermanently enjoin enforcement and administration of 15 U.S.C. §§ 631(f)(1)(B) and 637(a)(5)." ECF No. 1 at 20.

[6] Notably, injunctive relief may not be an available remedy in this case because of sovereign immunity. *J.C. Driskill, Inc. v. Abdnor*, 901 F.2d 383, 386 (4th Cir. 1990) (relying on 15 U.S.C. § 634(b)(1) to support holding that "courts have no jurisdiction to award injunctive relief against the SBA"). Defendants reserve the right to make that argument if the Court does not dismiss Plaintiffs' Complaint.

Nor would eliminating the race-conscious presumption change the competition that Plaintiffs currently face for government contracts. Plaintiffs do not allege in their Complaint that eliminating the presumption would reduce the number of 8(a) participants.[7] Even if Plaintiffs had alleged that eliminating the race-conscious presumption would lead to fewer 8(a) participants, or if they amended their Complaint to do so, a sister district court in the Fourth Circuit has recognized that such an allegation alone "would be pure speculation." *Interstate Traffic Control v. Beverage*, 101 F. Supp. 2d 445, 453 (S.D. W.Va. 2000). If the Court eliminated the race-conscious presumption, it "would not alter the number or identity of socially and economically disadvantaged individuals eligible to participate" in the 8(a) program. *Id.* It would only alter the method of approval. Only if there are allegations that program participants are failing to "truthfully certify[] social and economic disadvantage" or that the program suffers from any kind of fraud would it be plausible that eliminating the presumption would redress Plaintiffs' injuries. *Id.* But Plaintiffs make no such allegations here, and thus, the program's impact on Plaintiffs "would continue unaltered" even if the Court eliminated the presumption. *Id.*; *see also Cache Valley*, 149 F.3d at 1123 ("[I]t would be pure speculation to conclude that invalidating the allegedly unconstitutional preferences would ameliorate plaintiff's ability to compete in any way."). If the Court eliminated the race-conscious presumption, Plaintiffs would still compete on the same footing with the same number of firms in the 8(a) program that they compete against today.

---

[7] Plaintiffs, for the first time in their opposition to the motion to dismiss, argue that eliminating the race-conscious presumption would reduce the number of 8(a) program participants. ECF No. 26 at 14 n.6. Indeed, Plaintiffs' appear to allege the precise *opposite* in their Complaint, stating that "[i]n the absence of the racial preference, SBA would accept *more* program participants based on individualized evidence of disadvantage." ECF No. 1 at ¶ 66 (emphasis added). Plaintiffs' new allegations regarding the number of 8(a) program participants should not be considered because Plaintiffs cannot amend their complaint through briefing. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 449 (4th Cir. 2011); *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013).

Finally, Plaintiffs rely on *City of Jacksonville* to assert the plausibility of their allegations related to redressability. ECF No. 26 at 14. But only injury in fact was at issue in *City of Jacksonville*, not redressability. *See* 508 U.S. at 666. Plaintiffs' attempt to collapse these two separate elements of standing defies Supreme Court precedent. *See, e.g.*, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (defining the elements of standing as injury in fact, traceability, and redressability); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (same); *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010) (same); *Lujan*, 504 U.S. at 560-61 (same).

## II.   Plaintiffs' Claim Under the Nondelegation Doctrine Should be Dismissed Because the Act Provides an "Intelligible Principle" to Guide SBA.

Like the court did in *Rothe Development, Inc. v. United States Department of Defense*, this Court should reject Plaintiffs' arguments in support of their nondelegation claim because Section 8(a) of the Small Business Act (the "Act") provides SBA with an "intelligible principle" on which to base its regulations. 836 F.3d 57, 74 (D.C. Cir. 2016).[8] Plaintiffs do not dispute that, to prevail on their nondelegation claim, they must show that the Act provides "literally no guidance" to SBA. ECF No. 26 at 21 (citing *Whitman v. American Trucking Ass'ns,* 531 U.S. 457, 474 (2001)). Plaintiffs' argument ignores the Act's definitions of socially and economically disadvantaged individuals (15 U.S.C. §§ 637(a)(5) and (6)) which, in conjunction with the Act's Declaration of Policy (15 U.S.C. § 631), provide more than enough guidance to surpass the bar required by the nondelegation doctrine. *S. Carolina Med. Ass'n v. Thompson*, 327 F.3d 346, 350 (4th Cir. 2003) (nondelegation doctrine does not impose an "onerous burden" on government).

---

[8] Plaintiffs argue that *Rothe* is distinguishable from this case because, unlike the plaintiff in *Rothe*, they have challenged both the SBA's regulations and the Act. ECF No. 26 at n.9. This distinction is immaterial to Plaintiffs' nondelegation claim. A nondelegation claim necessarily pertains to a statute, not a regulation, because a plaintiff asserting a nondelegation claim must show that Congress provided no guidance to the Executive *in the statute at issue in the case*. Thus, Plaintiffs' challenge to the regulations does not have any relevance to their nondelegation claim.

Section 8(a) program participants must be owned by individuals who are both socially and economically disadvantaged. 15 U.S.C. §§ 637(a)(5) & (6). Under the Act, a "socially disadvantaged" individual is defined as someone who has "been subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group without regard to their individual qualities." 15 U.S.C. § 637(a)(5). The Act defines an "economically disadvantaged" individual as someone "whose ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities as compared to others in the same business area who are not socially disadvantaged" and it provides SBA with factors that the agency may consider when determining whether someone is economically disadvantaged. 15 U.S.C. § 637(a)(6)(A). This is far from the "unfettered discretion" afforded by the legislation at issue in *Panama Refining Co. v. Ryan*, 293 U.S. 388, 431 (1935). ECF No. 26 at 20. Contrary to Plaintiffs' claim, these definitions guide SBA's ongoing determinations on which economically disadvantaged individuals have and have not suffered the particular types of bias defined in the statute and whether certain groups of economically disadvantaged individuals should benefit from a presumption of social disadvantage.

Plaintiffs' argument that the Act "lacks any guidance" for which contracts SBA may set aside for the 8(a) program fares no better. ECF No. 26 at 20. The Act allows SBA to enter into contracts with federal agencies "to furnish articles, equipment, supplies, services, or materials to the Government or to perform construction work for the Government." 15 U.S.C. § 637(a)(1)(A). The Act then specifically permits SBA to subcontract with "socially and economically disadvantaged small business concerns" on contracts for "construction work, services, or the manufacture, supply, assembly of such articles, equipment, supplies, materials, or parts thereof, or servicing or processing in connection therewith, or such management services as may be necessary

to enable [SBA] to perform such contracts." 15 U.S.C. § 637(a)(1)(B). Thus, contrary to Plaintiffs' argument, the Act does not simply give SBA discretion to award contracts as it deems "necessary or appropriate." ECF No. 26 at 20. For these reasons, the Court should follow the reasoning from *Rothe*, reject Plaintiffs' arguments in support of their nondelegation claim, and grant Defendants' motion to dismiss that claim.[9]

### III. The Court Should Adopt the Reasoning in *Rothe* and Reject Plaintiffs' Equal Protection Challenge to the Act.

The Court should also apply the logic of *Rothe* and hold that the Act itself does not trigger strict scrutiny because it is race-neutral. 836 F.3d 57, 72-73 (D.C. Cir. 2016). Plaintiffs argue that this Court should decline to follow *Rothe* because portions of the Congressional findings that underlie the Act speak in race-conscious terms. ECF No. 26 at 15. But it is well settled that Congressional findings, "like a preamble, may contribute to a general understanding of a statute, but unlike the provisions that confer and define agency powers, they are not an operative part of the statute." *Id.* at 66 (cleaned up); *see also Jurgensen v. Fairfax Cty.*, 745 F.2d 868, 885 (4th Cir. 1984) (holding that legislative preambles are "not an operative part of the statute" and do "not enlarge or confer powers on administrative agencies or officers"). Thus, the *Rothe* court held that, while Congress may have had many reasons to identify certain racial groups when it announced the policy behind the 8(a) program, these Congressional findings do not transform the operative portions of the Act into a statute that provides preferences to individuals based on their membership in a racial or ethnic minority group. 836 F.3d at 66-67. Because the operative portions

---

[9] Plaintiffs assert in their brief that Defendants did not address Plaintiffs' other separation-of-powers claims. ECF No. 26 at 23. Defendants have argued that the Court should dismiss all of Plaintiffs' claims, including those separation-of-powers claims, because Plaintiffs lack standing. Defendants reserve the right to make other arguments in defense of Plaintiffs' separation-of-powers claims if the Court denies this motion to dismiss.

of the Act are "facially race-neutral," the Act need only satisfy rational basis review (*id.* at 62-64) and, as the *Rothe* court explained, the Act easily satisfies that standard (*id.* at 73).

## IV.     Plaintiffs' Claim for Relief Based on Their Eligibility for the 8(a) Program is Untimely.

Plaintiffs' equal protection challenge to the race-conscious presumption (Claim for Relief I) is untimely. Plaintiffs argue that the statute of limitations does not bar their claim "because the relief they seek is prospective and the injury they have suffered is continuing." ECF No. 26 at 25. But these bare assertions do not end the timeliness inquiry. *See e.g., Johnson v. Jessup*, 381 F. Supp. 3d 619, 636 (M.D.N.C. 2019) (relying on *Nat'l Advert. Co. v. City of Raleigh*, 947 F.2d 1158, 1166 (4th Cir. 1991)) and *Bird v. Dep't of Human Svcs.*, 935 F.3d 738, 744-46 and n.4 (9th Cir. 2019).[10] Plaintiffs last applied directly to the SBA for participation in the Section 8(a) program without the benefit of the presumption in 2016, and its administrative appeal of the determination was denied in 2017. To the extent that Plaintiffs have been directly injured by that decision, that injury occurred five years ago.

Plaintiffs now seek to enjoin the presumption prospectively, contending that "Mr. Hierholzer could apply again for acceptance into the 8(a) program should the racial presumption be struck down." ECF 26 at 29. The Ninth Circuit declined a similar entreaty in *Bird*, reasoning that such a standard "would mean that a person who has been harmed by an allegedly unconstitutional statute can bring suit *at any time* so long as the statute remains in operation." *Bird*,

---

[10] Plaintiffs rely on *Va. Hosp. Ass'n v. Baliles*, 868 F.2d 653 (4th Cir. 1989) ("*VHA*"). ECF No. 26 at 25. The *Bird* court discussed *VHA* in depth and explained why it did not support the plaintiff's position in that case, which is the same position Plaintiffs have asserted here. *Bird*, 935 F.3d at 744-45. *VHA* merely stands for the proposition that the statute of limitations for a constitutional challenge to a statute begins to run when the plaintiff suffers harm from the statute, not when the statute is enacted. *Id.* The *Jessup* court also considered *VHA* and determined that *VHA* did not save the time-barred claims in that case either. *Jessup*, 381 F. Supp. 3d at 636.

935 F.3d at 744 (emphasis in original). Similarly, in *Jessup*, the court dismissed as untimely the claims of some of the plaintiffs who sought prospective injunctive relief to address an unconstitutional statute that continued to harm them. *See* 381 F. Supp. 3d at 623. There is no reason to depart from the ordinary analysis of statute of limitations defenses in cases challenging the constitutionality of a statute. If the race-conscious presumption is unconstitutional, a plaintiff with a timely and procedurally proper claim could challenge it and, thus, it would not be "immune from challenge." *Bird*, 935 F.3d at 746. Therefore, the Court should dismiss Plaintiffs' Claim for Relief I because it is time-barred.

## IV.   Conclusion.

For the reasons discussed above and in Defendants' opening brief, the Court should grant Defendants' motion and dismiss Plaintiffs' Complaint in its entirety.

Date:                                          Respectfully submitted,

OF COUNSEL:                         KAREN D. WOODARD
                                                   Chief
Eric S. Benderson                        Employment Litigation Section
Associate General Counsel for Litigation    Civil Rights Division
                                                   United States Department of Justice
David A. Fishman
Assistant General Counsel for Litigation    ANDREW BRANIFF (IN Bar No. 23430-71)
                                                   Deputy Chief
Carol-Ann J. Hulme
General Attorney
U.S. Small Business Administration    By: /s/ Allan K. Townsend
                                                   Allan K. Townsend (ME Bar No. 9347)
                                                   Ejaz H. Baluch, Jr. (MD Bar No. 1612130032)
                                                   Trial Attorneys
                                                   Employment Litigation Section
                                                   Civil Rights Division
                                                   United States Department of Justice
                                                   150 M Street, N.E.
                                                   Washington, D.C. 20002
                                                   (202) 353-5343
                                                   Allan.Townsend2@usdoj.gov
                                                   Ejaz.Baluch@usdoj.gov

JESSICA D. ABER
UNITED STATES ATTORNEY

/s/ Virginia L. Van Valkenburg
Virginia L. Van Valkenburg
Assistant United States Attorney
Virginia State Bar No. 33258
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Tel: (757) 441-3217
Fax: (757) 441-6689
Virginia.VanValkenburg@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that I served the foregoing document on all counsel of record via the Court's electronic filing system on the date below.

Date:                                        /s/ Allan K. Townsend

17