

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

MARTY HIERHOLZER, an individual

and

MJL Enterprises, LLC, a Virginia corporation

      Plaintiffs,

V.                                                  Civil Action No. 2:23-cv-0024

ISABEL GUZMAN, in her official capacity as Administrator of the Small Business Administration

and

SMALL BUSINESS ADMINISTRATION,

      Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion to Dismiss the Complaint pursuant to the Federal Rules of Civil Procedure ("FRCP") Rule 12(b)(1) and 12(b)(6) filed by Isabel Guzman, Administrator of the Small Business Administration, and the Small Business Administration ("SBA") (collectively, "Defendants"). ECF Nos. 19, 20 ("Defs.' Mot."). Marty Hierholzer ("Hierholzer"), an individual, and MJL Enterprises, LLC ("MJL"), a Virginia corporation (collectively "Plaintiffs") filed a response to Defendants' Motion. ECF No. 26 ("Pls.' Resp."). Defendants filed their reply. ECF No. 27 ("Defs.' Reply"). Plaintiffs also filed their Notice of Supplemental Authority. ECF No. 34 ("Pls.' Supp. Auth."). On January 31, 2024, the Court heard oral

argument on the Motion. The Court has considered the parties' memoranda. For the reasons stated herein, Defendants' Motion to Dismiss is **GRANTED**.

## I. FACTUAL AND PROCEDURAL HISTORY

Relevant to Defendants' Motion to Dismiss and stated in the light most favorable to Plaintiffs, the following alleged facts are drawn from the Complaint and attachments thereto.

### *Marty Hierholzer and MJL Enterprises*

On January 18, 2023, Hierholzer and MJL filed their Complaint against Defendants. ECF No. 1 ("Pls.' Compl."). In 2006, Hierholzer started his business, MJL, which provides government contracting services to the United States military. *Id.* ¶ 14. Allegedly, MJL is a small business, and Hierholzer is the president and chief executive officer. *Id.* Hierholzer is a service-disabled veteran who served twenty-two years in the Navy as a saturation diver. *Id.* ¶¶ 15–16. Hierholzer sustained many injuries in the line of duty, rendering him disabled. *Id.* ¶¶ 16–19. The Department of Veteran Affairs ("VA") rates Hierholzer as 60% disabled. *Id.* After Hierholzer retired in 2002, he started his own business providing "medical, maintenance, and repair equipment to military bases and VA hospitals. MJL also delivers office supplies to VA hospitals and offices and high-tech safety and security equipment to first responders. Additionally, MJL provides logistical labor and personnel services for VA hospitals." *Id.* ¶¶ 20–22.

### *The Small Business Administration 8(a) Program*

Congress enacted the Small Business Act of 1953 ("the Act") to protect small businesses and preserve the free competitive enterprise system. 15 U.S.C. § 637. The Act established various programs including the 8(a) Program. Section 8(a) of the Act authorizes the SBA to enter into agreements for goods and services with other federal agencies, and to subcontract those agreements to socially and economically disadvantaged small business concerns. Pls.' Compl. ¶¶

27–28. The purpose of the 8(a) program includes "promot[ing] the business development of small business concerns owned and controlled by socially and economically disadvantaged individuals so that such concerns can compete on an equal basis in the American economy." 15 U.S.C. § 631(f)(2). Socially disadvantaged individuals are "those who have been subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group without regard to their individual qualities." 15 U.S.C. § 637(a)(5). Hierholzer believed his business would qualify because he allegedly had been subjected to "cultural bias" because of his service-disabled veteran status. Pls.' Compl. ¶ 32. Economically disadvantaged individuals are those "socially disadvantaged individuals whose ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities." *Id.* ¶ 33; 15 U.S.C. § 637(a)(6).

Section 631(f) of the Act contains additional racial classification for those who are socially disadvantaged, including members of certain racial groups that enjoy a rebuttable presumption such as "Black Americans, Hispanic Americans, Native Americans, Indian tribes, Asian Pacific Americans, Native Hawaiian Organizations, and other minorities." Pls.' Compl. ¶ 34; 15 U.S.C. § 631(f)(1). An individual in those groups must demonstrate that "he or she has held himself or herself out, and is currently identified by others, as a member of a designated group if SBA requires it." Pls.' Compl. ¶ 42; 13 C.F.R. § 124.103(b)(2). "The presumption of social disadvantage may be overcome with credible evidence to the contrary." 13 C.F.R. § 124.103(b)(3).

Other groups may petition the SBA to add them as a presumptively socially disadvantaged group. Pls.' Compl. ¶¶ 43–44; 13 C.F.R. § 124.103(c). "Such individual should present corroborating evidence to support his or her claim(s) of social disadvantage where

3

readily available." 13 C.F.R. § 124.103(c). Such individual must include "at least one objective distinguishing feature that contributed to social disadvantage," must be based on treatment in American society that's chronic and substantial, and negatively impacted their entry or advancement in the business world. *Id.* Then SBA would decide whether that group should be considered presumptively disadvantaged. *Id.* § 124.103(d). Allegedly, the SBA has received and rejected many "petitions from Hasidic Jews, women, and Iranians, while it has accepted petitions from Asian Indians (the highest income racial group in the United States) and Sri Lankans." Pls.' Compl. ¶ 45. In 1987, the SBA allegedly "rejected a petition from service-disabled veterans to be considered presumptively disadvantaged." *Id.* ¶ 46.

*Hierholzer's experience applying for the 8(a) Program*

Hierholzer is of German and Scottish descent and not a member of one of the groups listed as socially disadvantaged. *Id.* ¶ 47. Hierholzer must put forth evidence to support that he is socially disadvantaged, including race, ethnicity, gender, and physical handicap. *Id.* ¶ 48–50; *see also* 13 C.F.R. § 124.103(c)(2). Additionally, his disadvantage must be based on treatment in American society that's chronic and substantial and has negatively impacted his entry or advancement in the business world. Pls.' Compl. ¶¶ 51–53; *see also* 13 C.F.R. § 124.103(c)(2). Allegedly, Hierholzer applied in 2009 and 2016 for 8(a) Program eligibilty, and he presented evidence of his disabilities and the disadvantages he faced in his career and personal life. Pls.' Compl. ¶ 54. The SBA denied both applications, and he sought reconsideration of the 2016 denial, which the SBA's Office of Hearings and Appeals affirmed in 2017 because Hierholzer failed to show that his disability resulted in social disadvantage. *Id.* ¶ 55; *see also In the Matter of: MJL Enterprises, LLC, Petitioner*, SBA No. BDPE-556, 2017 WL 8231365 (Dec. 18, 2017). Hierholzer allegedly "became aware that while he was denied eligibility for the 8(a) Program,

4

others were eligible based on their race without having to prove specific social disadvantages." Pls.' Compl. ¶ 63. Hierholzer believes that he would have been accepted into the 8(a) Program "if he belonged to one of the favored races listed in 15 U.S.C. § 631(f)(1)(B), (C) and 13 C.F.R. § 124.103(b)(1)." *Id.* ¶ 64. Allegedly, "the statute deprived MJL from standing on equal footing for 8(a) Program eligibility and competing for exclusive 8(a) contracting opportunities." *Id.* ¶ 65. Hierholzer believes that the "SBA would accept more program participants based on individualized evidence of disadvantage" rather than racial preference. *Id.* ¶ 66.

*MJL's Injury*

Hierholzer is not a member of one of the classified racial groups, making MJL "unable to compete for contracts under the 8(a) Program that it could successfully procure and perform if allowed to do so." *Id.* ¶ 70. MJL cannot access benefits provided to the 8(a) Program, including "access to business development assistance, free training opportunities through the SBA, and federal surplus property access." *Id.* ¶ 71. MJL is allegedly at a competitive disadvantage when competing for government contracts and does not enjoy a presumption of disadvantage. *Id.* ¶ 73.

Plaintiffs accuse Defendants of violating the Constitution by denying Plaintiffs the ability to participate in the 8(a) Program based on race. Pls.' Compl. Additionally, the SBA allegedly arrogated to itself power beyond what Congress authorized to establish racial classifications and preferences. *Id.* If Congress did give SBA that power, then Plaintiffs allege that Congress violated the United States Constitution nondelegation doctrine. *Id.* Specifically, Plaintiffs assert five claims against Defendants:

> Claim 1.  The presumption that designated groups are socially disadvantaged denies MJL equal protection in violation of the Fifth Amendment (*Id.* ¶¶ 76–90);

Claim 2. The racial classifications established by the 8(a) Program and implementing the regulations violate the Fifth Amendment's equal protection guarantee (*Id.* ¶¶ 91–98);

Claim 3. The SBA's 8(a) Program rule claiming authority to decide which racial groups enjoy a presumption of social disadvantage (13 C.F.R. § 124.103(b)(1)) violates the Administrative Procedure Act ("APA") (5 U.S.C. § 706(2)) because it exceeds the agency's statutory authority (*Id.* ¶¶ 99–106);

Claim 4. The SBA's 8(a) Program is an unconstitutional exercise of legislative power (Violation of the Nondelegation Doctrine, U.S. Const. art. I, § 1) (*Id.* ¶¶ 107–112)

Claim 5. The SBA 8(a) regulations are arbitrary and capricious in violation of the APA (5 U.S.C. § 706(2)(a)) (*Id.* ¶¶ 113–117).

Plaintiffs sues Isabel Guzman in her official capacity and the SBA as a cabinet-level agency of the United States government. *Id.* ¶¶ 12–13.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of actions that lack subject matter jurisdiction. Federal courts are courts of limited subject matter jurisdiction. *See Pinkley, Inc. v. City of Frederick, Md.*, 191 F.3d 394, 399 (4th Cir. 1999). Accordingly, "before a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006). For a 12(b)(1) motion, a defendant can challenge subject matter jurisdiction in two ways. First, a defendant may argue that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based."

*Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). "[A]ll the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Id.*

Second, a defendant may argue that the jurisdictional allegations in the complaint are not true. *Id.* "A trial court may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations." *Id.* The burden is on the plaintiff to prove subject matter jurisdiction and a trial court may consider evidence "by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment." *Id.* "As the Supreme Court has explained with respect to such situations, a trial court should dismiss under Rule 12(b)(1) only when the jurisdictional allegations are clearly . . . immaterial, made solely for the purpose of obtaining jurisdiction or where such a claim is wholly unsubstantial and frivolous." *See Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009) (internal citation and quotation omitted).

### B. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of actions that fail to state a claim upon which relief can be granted. Considering a Rule 12(b)(6) motion, courts may only rely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). Courts will favorably construe the allegations of the complainant and assume that the facts alleged in the complaint are true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a court "need not accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc., v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but the complaint must incorporate "enough facts to state a belief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). This plausibility standard does not equate to a probability requirement, but it entails more than a mere possibility that a defendant has acted unlawfully. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 677, and *Twombly*, 550 U.S. at 557). To achieve factual plausibility, plaintiffs must allege more than "naked assertions . . . without some further factual enhancement." *Twombly*, 550 U.S. at 557. Otherwise, the complaint will "stop[ ] short of the line between possibility and plausibility of entitlement to relief." *Id.*

### III. DISCUSSION

Under Rule 12(b)(1), Defendants move to dismiss all five Claims for lack of standing. Defs.' Mot. at 6. Under Rule 12(b)(6), Defendants move to dismiss Claims One, Two, and Four of the Complaint for failure to state a claim upon which relief can be granted. *Id.* The Court will address whether the Claims lack standing before addressing the plausibility of each Claim.

#### A. Standing

As an initial matter, a federal district court has jurisdiction to hear cases and controversies arising under the Constitution, laws, or treaties of the United States. U.S. Const. Art. III § 2. "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (internal citations and quotations omitted). Article III standing is designed to "prevent the

judicial process from being used to usurp the powers of the political branches." *Id.* "The federal judicial power is not an unconditioned authority to determine the constitutionality of legislative or executive acts." *Carpenter v. Barnhart*, 894 F.2d 401 (4th Cir. 1990).

To establish standing, a plaintiff must allege: "(1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant ["causation"], and (3) that is likely to be redressed by a favorable judicial decision." *Buscemi v. Bell*, 964 F.3d 252, 258 (4th Cir. 2020) (internal citation and quotation omitted). These requirements ensure "that the plaintiff has a personal stake in the outcome of the controversy." *Id.* In this case, Plaintiffs allege that the SBA denied them the opportunity to participate in the 8(a) Program based on race. Pls.' Compl. ¶ 4. However, Defendants argue that Plaintiffs lack standing because "they have not plausibly alleged any of the three elements that are required to establish Article III standing." Defs.' Mot. at 8. The Court will address the elements of standing separately.

    *1. Injury in Fact*

According to the Complaint, Plaintiffs assert that the SBA has denied them the opportunity to participate in the 8(a) Program based on race. Pls.' Compl. ¶ 4. Further, Plaintiffs assert that the statutes and regulations for the 8(a) Program prevent MJL from "standing on equal footing for the 8(a) Program eligibility and then from competing for exclusive 8(a) contracting opportunities based on race." *Id.* ¶ 67. Plaintiffs also assert that Hierholzer is not a member of a group that SBA classifies as socially disadvantaged, which puts MJL at a "competitive disadvantage when competing for government contracts." *Id.* ¶¶ 70–73.

Defendants argue that "Plaintiffs fail to point to any specific loss of business and, thus, fail to sufficiently allege an injury in fact." Defs.' Mot. at 17. Additionally, Defendants argue that Plaintiffs fail to allege that MJL ever competed against an 8(a) Program participant for a contract or that they lost any bids to an 8(a) Program participant. *Id.* Plaintiffs respond that their

9

injury is "the denial of equal treatment on the basis of race." Pls.' Resp. at 10. Additionally, Plaintiffs argue that Defendants are wrong in asserting that the "race-based presumption of social disadvantage was not a complete bar to contracts set aside for 8(a) business." *Id*. Defendants replied that Plaintiffs fail to allege that they are "able and ready to bid on any Section 8(a) [P]rogram contracts" and the harms Plaintiffs allegedly are suffering are "too speculative to constitute an injury in fact." Defs.' Reply at 2.

To prove injury in fact, a plaintiff must show that the injury is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "The threatened injury must be certainly impending, and allegations of possible future injury are insufficient." *Buscemi*, 964 F.3d at 259 (alterations omitted). "An injury reliant on a highly attenuated chain of possibilities does not qualify as being certainly impending." *Id*. (alterations omitted). "When a plaintiff challenges the constitutionality of a statute, the plaintiff must show that there is a realistic danger that the plaintiff will sustain a direct injury as a result of the terms of the statute." *Id*. (alterations omitted). Furthermore, when a set-aside program is at issue, "the 'injury in fact' is the inability to compete on an equal footing in the bidding process, not the loss of a contract." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993). Therefore, a plaintiff challenging a set-aside program need only to "demonstrate that it is able and ready to bid on contracts and that a discriminatory policy prevents it from doing so on an equal basis." *Id*.

Here, Plaintiffs fail to allege that they lost a contract bid because of the race-conscious presumption to join the 8(a) Program. Plaintiffs' injury is not "concrete" or "actual or imminent" because Plaintiffs have not alleged in their Complaint any specific contract bids that they lost. Additionally, Plaintiffs fail to allege that they meet the requirements of "economically

disadvantaged."[1] *See generally* Pls.' Compl. Plaintiffs' Complaint lacks any allegations that they are economically disadvantaged based on the factors listed in 13 C.F.R. § 124.104. Defendants provided documentation noting that Plaintiffs have participated in the service-disabled veteran-owned small business program and awarded roughly $130 million in contracts. *See* Defs.' Mot. at Exs. 1, 2. Since Plaintiffs fail to allege that they are economically disadvantaged, the race-conscious presumption could not have prevented Plaintiffs from being accepted into the 8(a) Program.

Unlike the *City of Jacksonville*, the plaintiffs could not compete for set-aside contracts because a discriminatory policy prevented them from doing so. *City of Jacksonville*, 508 U.S. at 658. The court held that the plaintiffs suffered an injury because the program served as a barrier preventing the plaintiffs from participating. *Id.* at 667–68. In this case, the 8(a) Program does not pose a barrier to Plaintiffs, like the plaintiff in the *City of Jacksonville*, because anyone can participate in the 8(a) Program, no matter their race or gender, if they submit evidence demonstrating social and economic disadvantage. The barrier is Plaintiffs' own failure to meet the 8(a) Program eligibility requirements—social and economic disadvantage. Additionally, Plaintiffs have not shown that they are ready and able to bid on the 8(a) Program contracts. *City of Jacksonville*, 508 U.S. at 666. Therefore, Plaintiffs fail to allege an injury in fact.

  2. *Causation*

Plaintiffs' allegations in the Complaint are the same as above. *See* Pls.' Compl. ¶¶ 67–75. Defendants argue that Plaintiffs cannot trace their alleged injury to the race-conscious presumption. Defs.' Mot. at 9. Additionally, Defendants argue that Plaintiffs fail to allege that

---

[1] Under 13 C.F.R. § 124.104, each individual claiming economic disadvantage must submit a narrative and personal financial information. The SBA will consider the following: (1) the individual's average adjusted gross income cannot exceed $400,000 over three years preceding the submission of an application; (2) the individual's net worth must be less than $850,000; (3) the fair market value of an individual's assets must not exceed $6.5 million; and (4) any asset transfers within two years. *Id.*

they can participate in the 8(a) Program without satisfying the race-conscious presumption. *Id.* Plaintiffs respond that the 8(a) Program imposes hurdles for Hierholzer because of his race. Pls.' Resp. at 12. Additionally, Plaintiffs argue that Hierholzer must make an additional showing since he is not a member of one of the racial or ethnic groups. *Id.* Plaintiffs also argue that Hierholzer meets the eligibility requirements for economic disadvantage. *Id.* Defendants replied that Plaintiffs cannot cure their failure for not alleging Hierholzer's economic status to prove that he is economically disadvantaged. Defs.' Reply at 8.

To prove causation, Plaintiffs must demonstrate "a causal connection between the injury and the conduct complained of." *Interstate Traffic Control v. Beverage*, 101 F. Supp. 2d 445, 451 (S.D.W. Va. 2000). This means that "it must be likely that the injury was caused by the conduct complained of and not by the independent action of some third party not before the court." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154 (4th Cir. 2000).

Here, Plaintiffs fail to allege that Defendants' use of the race-conscious presumption caused their alleged injuries. Plaintiffs have not alleged that they can compete for the 8(a) Program contracts if the race-conscious presumption was removed because they have not alleged facts demonstrating social and economic disadvantage. In *SRS Techs., Inc. v. U.S. Dep't of Def.*, the plaintiff argued that the race-conscious presumption of social disadvantage prohibited the plaintiff from participating in the 8(a) Program for race-based reasons. 112 F.3d 510, 1997 WL 225979, at *1 (4th Cir. 1997). The court found that the plaintiff was ineligible to participate because its owner is a multimillionaire who failed to meet the economic disadvantage requirement, which is a race-neutral criterion. *Id.* Thus, the court held the race-conscious presumption did not cause the plaintiff to not qualify for the 8(a) Program. *Id.* Like the plaintiff

in *SRS*, Plaintiffs fail to meet a race-neutral criterion for participation in the 8(a) Program. The Complaint does not state whether Plaintiffs meet the eligibility requirements for economically disadvantaged. *See generally* Pls.' Compl.; *see also Iqbal*, 556 U.S. at 678 (stating a complaint is not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'") (alterations omitted).

Recognizing this, Plaintiffs filed an affidavit from Hierholzer, which they attached to their response to Defendants' Motion to Dismiss. Although the Court may consider documents presented on the issue of jurisdiction, which Plaintiff failed to attach to their Complaint, the Court finds the affidavit insufficient to establish that Plaintiffs are economically disadvantaged. *See Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (stating courts may consider evidence beyond the complaint's allegations if there are facts to support or refute the jurisdictional allegations). Hierholzer states that he "believe[s]" he meets the requirements for economically disadvantaged. Hierholzer's beliefs are not enough to demonstrate that he is economically disadvantaged. Even if the Court accepts the affidavit as true, it fails to discuss asset transfers within two years, a factor that SBA will consider in determining if an individual is economically disadvantaged.[2] This leaves open the possibility that Plaintiffs are not economically disadvantaged. Nevertheless, the affidavit is inadequate to cure deficiencies in the Complaint. *U.S. ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 458–59 n.8 (4th Cir. 2013) (stating that a "plaintiff cannot cure pleading deficiencies in the [] complaint with later-filed supporting documentation on a motion to dismiss.").

---

[2] *See* 13 C.F.R. § 124.104(c)(1)(i) (stating "SBA will attribute to an individual claiming disadvantaged status any assets which that individual has transferred . . . for less than fair market value, within two years prior to [applying] . . . or within two years of a Participant's annual program review, unless the individual . . . can demonstrate that the transfer is to or on behalf of an immediate family member for that individual's education, medical expenses, or some other form of essential support.").

13

Furthermore, Plaintiffs have not alleged social disadvantage status in absence of the race-conscious presumption. Plaintiffs applied for the 8(a) Program twice and were denied entry each time. The SBA denied Plaintiffs because they failed to show that they are socially disadvantaged, not because of their race.[3] Plaintiffs cannot establish causation because they fail to allege the presumption that certain racial and ethnic groups enjoy is causally related to their alleged injury. Therefore, Plaintiffs fail to allege causation.

### 3. *Redressability*
#### A. Motion to Dismiss

Plaintiffs allege they will continue to suffer irreparable harm if the racial classification remains in effect. Pls.' Compl. ¶ 74. Additionally, Plaintiffs request the Court to declare the racial classifications unconstitutional and to "permanently enjoin enforcement and administration of 15 U.S.C. §§ 631(f)(1)(B) and 637(a)(5), (8) to the extent that they employ a racial preference." *Id.* at 20. Defendants argue that Plaintiffs would be in the same place they are in now if the Court eliminates the race-conscious presumption because they have not sufficiently alleged social disadvantage status. Defs.' Mot. at 13. Plaintiffs respond that a judicial decree directing Defendants to discontinue using the racial presumption would redress their injury. Pls.' Resp. at 14. Defendants argue eliminating the race-conscious presumption would not change the competition Plaintiffs face for government contracts. Defs.' Reply at 11. Additionally, Defendants argue that "Plaintiffs would still compete on the same footing with the same number of firms in the 8(a) [P]rogram that they compete against today." *Id.*

---

[3] *See In the Matter of: MJL Enterprises, LLC, Petitioner*, 2017 WL 8231365, at *7 (concluding "Petitioner has failed to offer evidence showing that his uncontested disability resulted in a social disadvantage impacting his advancement in the business world.").

To prove redressability, Plaintiffs must show that the relief sought will provide redress for the alleged injury. *See Interstate Traffic Control*, 101 F. Supp. 2d at 451. The Court must have the power to provide the requested relief Plaintiffs are seeking. *See Buscemi*, 964 F.3d at 259. Redressability must be "likely" and not "speculative." *See Lujan*, 504 U.S. at 561.

Here, Plaintiffs fail to show that they would be eligible for the program without the race-conscious presumption. Plaintiffs would still have to demonstrate social and economic disadvantage to get into the 8(a) Program. Plaintiffs have not plausibly alleged that striking down the presumption would redress their alleged injury. Additionally, it is pure speculation that the presumption makes it less likely MJL will be granted 8(a) eligibility and that MJL cannot compete for contracts that it could successfully procure and perform. Removing the presumption "would not alter the number or identity of socially and economically disadvantaged individuals eligible to participate." *See Interstate Traffic Control*, 101 F. Supp. 2d at 453. The race-conscious presumption is severable from the rest of the 8(a) Program, and the 8(a) Program would remain operative without the presumption because Plaintiffs would still have to demonstrate social and economic disadvantage. *See e.g., Cache Valley Elec. Co. v. Utah Dep't of Transp.*, 149 F.3d 1119, 1123 (10th Cir. 1998) (stating the disputed preferences are severable from the program because the plaintiff would still have to meet the requirements to participate in the program). Therefore, Plaintiffs fails to allege redressability.

### B. January 31st Oral Argument

On January 31, 2024, the Court held oral argument on Defendants' Motion. ECF No. 46. During oral argument, Defendants stated that since a sister court enjoined Defendants from using the race-conscious presumption,[4] Defendants have "purged" the presumption from the 8(a)

---

[4] *See Ultima Servs. Corp. v. U.S. Dep't of Agric.*, No. 2:20-cv-00041, 2023 WL 4633481 (E.D. Tenn. July 19, 2023)

15

Program process. *See* Excerpt of Proceedings at 3. According to Defendants, the SBA used the presumption in three stages: 1) at the application stage, 2) at the award stage, and 3) at the annual review stage. *Id.* However, the presumption is no longer involved in the 8(a) Program. *Id.* Defendants assert that "each individual applicant, regardless of their race or ethnicity, has to go through the exact same process to establish social and economic disadvantage. No change regardless of your racial or ethnic background. Each application is judged independently of that." *Id.* at 4:3–7.

To comply with the *Ultima* Court's injunction, Defendants paused all applications of individuals to the 8(a) Program. *Id.* Additionally, the SBA contacted any individuals accepted into the 8(a) Program through the presumption and required them to reapply without the use of the presumption, demonstrating social and economic disadvantage—the same process new applicants must go through. *Id.* at 4–5. Further, approximately 3,900 individuals were in the program at the time, and if they chose to remain, they were required to go through the same process described above. *Id.* at 5.

Given that the SBA removed the race-conscious presumption, there is nothing for the Court to redress. Plaintiffs assert that the race-conscious presumption hinders their ability to get accepted into the 8(a) Program, and for that same reason, the race-conscious presumption is causing their injury. *See* Pls.' Reply; *see also* Excerpt of Proceedings at 13. Further, since the race-conscious presumption is allegedly injuring them, then removal of the race-conscious presumption would redress their injury. *See* Pls.' Reply; *see also* Excerpt of Proceedings at 13. However, Defendants stated on record that they are no longer using the race-conscious presumption. Plaintiff did not rebut or challenge these representations Defense Counsel made to

the Court. Since the race-conscious presumption is no longer causing Plaintiffs alleged injury, then there is nothing to redress.

As the Court stated previously, the Constitution limits federal courts jurisdiction to cases and controversies. U.S. Const. Art. III § 2. "A corollary to this case-or-controversy requirement is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71, (2013) (internal citations and quotations omitted). "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Id.* at 72 (internal citation omitted). Here, the SBA changed the 8(a) Program application and removed the race-conscious presumption from all stages of the process. Plaintiffs no longer have a personal stake in the outcome of this litigation. Therefore, Plaintiffs claim is moot, and they fail to allege redressability.

Since Plaintiffs fail to meet the standing requirements, this Court lacks subject matter jurisdiction to entertain this dispute. *See Just. 360 v. Stirling*, 42 F.4th 450, 458 (4th Cir. 2022) ("No matter how interesting or elegant a party's argument, the federal courts have no power to breathe life into disputes."). Thus, Plaintiffs' Complaint is dismissed.

## IV. CONCLUSION

Based on the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**. ECF Nos. 19, 20. In view of the Court's ruling on this Motion, Defendants' Motion to Stay is **DENIED AS MOOT**. ECF No. 36

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to counsel for the Parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
February 15, 2024

Raymond A. Jackson
United States District Judge