```
                 IN THE UNITED STATES DISTRICT COURT
                 FOR THE EASTERN DISTRICT OF VIRGINIA
                            Norfolk Division


- - - - - - - - - - - - - - - - - - -
                                     )
  MARTY HIERHOLZER, et al.,          )
                                     )
          Plaintiffs,                )     CIVIL ACTION NO.
                                     )         2:23cv24
  v.                                 )
                                     )
  ISABEL GUZMAN, et al.,             )
                                     )
          Defendants.                )
- - - - - - - - - - - - - - - - - - -


                    TRANSCRIPT OF PROCEEDINGS
                       (Motion Hearing)

                       Norfolk, Virginia

                       January 31, 2024



BEFORE:  THE HONORABLE RAYMOND A. JACKSON
         United States District Judge


APPEARANCES:

         PACIFIC LEGAL FOUNDATION
         By:  Glenn E. Roper
              Joshua P. Thompson
              Counsel for the Plaintiffs

         U.S. DEPARTMENT OF JUSTICE - CIVIL RIGHTS DIVISION
         By:  Andrew Braniff
              Allan Townsend
              David Fishman
              Sosun Bae
              Eric Benderson
              Virginia Van Valkenburg
              Counsel for the Defendants
```

1               (Proceedings commenced at 11:02 a.m.)
2               THE CLERK:  Marty Hierholzer, et al., versus Isabel
3   Guzman, et al., in Civil Action 2:23cv24.
4               Mr. Roper, is the plaintiff ready to proceed?
5               MR. ROPER:  Yes.
6               THE CLERK:  Mr. Braniff, is the defendant ready to
7   proceed?
8               MR. BRANIFF:  Yes.
9               THE COURT:  Good morning, gentlemen.  We're here
10  this morning on the Defendants' Motion to Dismiss.  The Court
11  has had an opportunity to read the briefs, the reply brief,
12  the supplemental authority, the opinion of my colleague in
13  the District of Tennessee, and the Court is prepared to go
14  forward this morning on the hearing.
15              So let's get right to it.  It's the government's
16  Motion to Dismiss, and who will be arguing for the SBA?
17              MR. BRANIFF:  Your Honor, myself, Andrew Braniff,
18  and Allan Townsend.
19              THE COURT:  Okay.  I will hear what you have to say.
20              MR. BRANIFF:  May it please the Court.  My name is
21  Andrew Braniff.  I'm here on behalf of the Small Business
22  Administration.  I'm here with my colleagues Allan Townsend
23  and Sosun Bae.  David Fishman and Eric Benderson from the
24  Small Business Administration are also here, as is Virginia
25  Van Valkenburg from the Eastern District of Virginia.

1                Your Honor, this Court should grant this Motion to
2     Dismiss, but before we get to the elements of the motion that
3     we filed, we thought it was important to inform the Court of
4     the actions that the Small Business Administration has taken
5     since the entry of the order in *Ultima versus the Small*
6     *Business Administration* to demonstrate that the world in
7     which we're living in with regard to the 8(a) program has
8     changed dramatically since this Complaint was filed last
9     January and since the Motion to Dismiss last March.
10               To put it quite simply, the presumption at issue in
11    this case has been purged from the process.  On July 19th of
12    last year, the Eastern District of Tennessee ordered the
13    Small Business Administration and the U.S. Department of
14    Agriculture, or the defendants in that case, to stop the use
15    and application of the presumption in the 8(a) program, and
16    following that order, that is exactly what the Small Business
17    Administration has done.
18               There are three points at which the presumption is
19    used in the process, or has been shown by the SBA:  at the
20    application stage; at the award stage; and at the annual
21    review stage.  At all of those stages of the process, the
22    presumption has been removed.
23               Immediately following that order, the Small Business
24    Administration paused all application of individuals to the
25    8(a) program.  They reopened the portal to apply on

1   September 23rd of last year, and at that time, when it was
2   reopened, there was no presumption at all based on race or
3   ethnicity.  Each individual applicant, regardless of their
4   race or ethnicity, has to go through the exact same process
5   to establish social and economic disadvantage.  No change
6   regardless of your racial or ethnic background.  Each
7   application is judged independently of that.
8           Similarly, at the time the order was entered, the
9   SBA paused the award of 8(a) -- awards into the 8(a) program
10  going to individual 8(a) members.  Following the opening of
11  the portal, they have reinstituted doing those awards;
12  however, every time an award was requested by an agency, the
13  SBA would review whether or not the awardee in the 8(a)
14  program had gotten into the 8(a) program either through the
15  presumption or not.
16          If it was through the presumption, they required
17  that individual to reapply to the program and only award that
18  contract if that individual could receive the award without
19  the presumption -- or receive the 8(a) designation without
20  the presumption.
21          Finally, after the reopening of the portal, they
22  contacted all current members of the 8(a) program who had
23  been entered into the program with the use of the presumption
24  and required them to reapply to the program without the use
25  of the presumption, going through this -- a similar process

1   that new applicants would have to go through.
2           THE COURT:  Wouldn't that be difficult for people
3   who have relied on the fact that they used the presumption to
4   get in the program and are in the midst of doing business and
5   then you tell them to reapply and start all over again?
6           MR. BRANIFF:  It was a burden for the current
7   members in the program.  There were approximately 3,900
8   individuals in the program at the time.  If they chose to
9   reapply, in order to stay in the 8(a) program, they were
10  required to go through the process described; difficulties
11  based on their membership in a group, or otherwise
12  difficulties entering the marketplace, or in their education,
13  or other aspects that would cause them to be designated
14  socially or economically disadvantaged.
15          They're still going through that process for all of
16  the individual members, but every time an award is being
17  made, the individual business owner who is in the 8(a)
18  program has to be in the program without the use of the
19  presumption prior to that award being made.
20          So there's no point in the process anymore where a
21  presumption can affect any current member of the program, and
22  thus, the claims for relief that the plaintiff sought in
23  their Complaint simply don't exist anymore.
24          Their first claim for relief sought that the
25  presumption that designated groups that are socially

```
 1  disadvantaged denies them equal protection.  That presumption
 2  doesn't exist.  It doesn't exist at the application stage; it
 3  doesn't exist at the award stage; and all current members who
 4  are currently designated to get an award have to go through
 5  the process without the presumption.
 6          THE COURT:  So your argument is the current
 7  plaintiffs' Complaint and the issues have been mooted?
 8          MR. BRANIFF:  We don't have a final order in the
 9  Ultima case yet, following the decision there where the Court
10  enjoined the use of the presumption in the application of the
11  8(a) program and ordered argument on August 31st of last
12  year.  Following that, they had briefing for additional
13  relief that plaintiff in that case may have sought.
14  Additional briefing was completed in October, and we are
15  waiting for a final order on that decision.
16          That final order may augment the nature of the
17  injunction, but this Court doesn't need to reach mootness in
18  order to dismiss this matter now simply because there's no
19  injury or redressability here.
20          THE COURT:  The simple truth is, no matter what the
21  Court does, the SBA has moved ahead to remove the presumption
22  itself.
23          MR. BRANIFF:  Correct.  The SBA interpreted the
24  injunction quite broadly.
25          The second claim for relief that they seek seeks to
```

1   remove the racial classifications.  Again, those racial
2   classifications no longer matter because all of the
3   presumptions have been removed.
4         The third claim for relief says that the SBA's
5   rulemaking authority by which they chose the racial groups
6   who enjoyed the social presumption violated the
7   Administrative Procedures Act.  Again, there are no more
8   racial classifications that get the presumption, so that is
9   gone.
10        The delegation of an unconstitutional legislative
11   power no longer matters because the SBA is no longer using
12   the presumption, and stating that the SBA regulations are
13   arbitrary and capricious also no longer is in effect because
14   the presumptions simply don't exist.
15        And so because of this dramatically different world
16   that we're existing in, plaintiff is no longer being harmed
17   by the racial presumptions.  There's no injury, and there's
18   nothing that this Court can do to redress any alleged
19   injuries, but I'll pass it over to my co-counsel.
20        THE COURT:  I have a question for you before you sit
21   down.  I recognize what you have said, but the Court has a
22   curiosity.  When the plaintiff last applied for the program,
23   what was the specific ground on which SBA rejected his
24   request to enter the program?
25        MR. BRANIFF:  So it's my understanding that the

```
 1   plaintiff applied twice.  The most recent application, I
 2   believe the SBA determined that the plaintiff had not
 3   demonstrated that it was his membership in a group that
 4   caused a barrier or a burden on him in entering the economic
 5   marketplace.
 6             The standards for the application process have not
 7   changed.  The regulations behind them haven't changed, but
 8   the process has.  There's a brand new portal in place that
 9   alters the way in which individual applicants or current
10   members submit their narratives of disadvantage, to make it
11   more user friendly.
12             It's -- because of the new front-end process, it's
13   possible that if plaintiff were to reapply at this point, his
14   ability to describe his social disadvantage might be viewed
15   or organized differently, let's say, in order for the SBA to
16   consider the application.
17             THE COURT:  Don't all applicants to the SBA program
18   have to satisfy -- what is it? -- I think it's Section 13 CFR
19   Section 124.104 dealing with certain economic
20   disadvantages --
21             MR. BRANIFF:  That's correct.
22             THE COURT:  -- based on the amount of their income,
23   their net worth, et cetera, before they can even get into the
24   SBA program?
25             MR. BRANIFF:  That's correct, Your Honor.  Both the
```

1  social and economic disadvantage also have net worth limits
2  on all applicants regardless of their narrative of
3  disadvantage.
4         THE COURT: All right. Thank you very much.
5         I thought your cohort had said it all. Let me see
6  what you have to add.
7         MR. TOWNSEND: Allan Townsend for the United States,
8  Your Honor. I might not have much more to add. I just
9  wanted to look at this from the lens of standing. The three
10 elements of standing, as you know, are injury, causation, and
11 redressability. Because of the ultimate injunction, it's
12 even more apparent now than it was before that the
13 plaintiffs' alleged harms are no longer present.
14        The race-conscious presumption, as Mr. Braniff has
15 said, has been purged from the process, so there are no
16 longer any race-based elements for the plaintiff to
17 challenge. And because of that, they cannot establish any
18 injury from any race-based element, and for the same reason,
19 no race-based element is causing any injury. And because
20 there's no injury from a race-based element, there's nothing
21 to redress.
22        So on all three of those elements of standing, the
23 plaintiffs cannot meet their burden to establish it.
24        THE COURT: Thank you.
25        State your name for the record again, please.

1    MR. ROPER: Yes. Good morning, Your Honor. My name
2    is Glenn Roper for the plaintiffs.
3    THE COURT: Okay.
4    MR. ROPER: Your Honor, you heard this morning, I
5    think for the first time presented to this Court, some of
6    what SBA says it is doing in response to the *Ultima* decision.
7    But what you also heard my friend on the other side say is
8    that they are not arguing that this case is moot. And there
9    are two important reasons for that:
10   One is there has not been a final judgment issued in
11   the *Ultima* case, and so we don't yet know what the final
12   relief will look like. The parties in the *Ultima* case have
13   briefed the appropriate remedy, and my understanding from
14   looking at that briefing is that there is some dispute from
15   the plaintiff on that in that case as to whether SBA is
16   continuing to provide a discriminatory approach to those who
17   would have fallen under the presumption.
18   Secondly, the government has not indicated whether
19   it would appeal the *Ultima* decision. And the facts that a
20   district court in another state has issued an injunction does
21   not freeze the litigation on the same topic nationwide, and
22   it certainly does not deprive this Court of jurisdiction.
23   So the government is not even arguing that this case
24   is moot, and with respect to standing, standing is determined
25   as of the time that the Complaint was filed. If they want to

```
 1   suggest that circumstances have changed such that there is
 2   now a mootness issue, they can raise that at the appropriate
 3   time.  They have, you know, disclaimed doing so here.  They
 4   do not say that the case is moot yet.
 5          And so if they were to raise the mootness issue at
 6   some point in the future, I think the Court could consider it
 7   at that point, but here where we are now, I think the Court
 8   should address the Motion to Dismiss and proceed.
 9          THE COURT:  That being the case, let's go back.
10          Was your client, at the time he was rejected for
11   participation in the 8(a) program, was he economically
12   disadvantaged in accordance with the standards that the SBA
13   has for each applicant?  Was he economically disadvantaged?
14          MR. ROPER:  Yes, Your Honor, and two responses to
15   that.  First, we don't think that's a pleading requirement to
16   challenge the presumption, the racial presumption in the
17   statute.
18          THE COURT:  Wait a minute now.  All applicants have
19   to reach certain requirements to participate in the program.
20   And to participate in the program, this racial presumption is
21   part of the program.  You have to get in the program first
22   before you can start talking about you're impacted by a
23   racial presumption.
24          So don't jump over qualifying to get in the program
25   to talk about something that is happening in the program.  So
```

```
 1  you have to deal with your eligibility to even apply and get
 2  in the program in the first place, and that has to do with
 3  standing.  So that's why the Court asked you the question
 4  about his economic ability to be participating in the program
 5  in the first place.
 6          MR. ROPER:  I understand that.  As I read the
 7  statute, economic disadvantage is interpreted as a subset of
 8  those who are socially disadvantaged.  The economically
 9  disadvantaged are defined as socially disadvantaged
10  individuals who meet certain criteria.  So until you can get
11  over the social disadvantage hurdle, there isn't even an
12  economic disadvantage question.
13          In any event, we filed an affidavit in connection
14  with our response to the Motion to Dismiss for Mr. Hierholzer
15  explaining that he does meet the net worth, the asset value,
16  and the gross income requirements, which are the three things
17  that the SBA looks at in determining economic disadvantage.
18  So if that is something that needs to be shown, we've shown
19  it with that affidavit.
20          THE COURT:  Okay.  The Court is aware of your
21  affidavit.
22          MR. ROPER:  I'm sorry?
23          THE COURT:  The Court is aware of the affidavit.
24          MR. ROPER:  And we think that the affidavit is
25  sufficient, where even if there is a need to show economic
```

1  disadvantage, that's certainly been satisfied through the
2  affidavit where we -- plaintiffs have stated.
3        THE COURT:  Well, the Court has some question about
4  that, but you go on.
5        MR. ROPER:  With -- if the Court doesn't have any
6  other questions about the *Ultima* case or the mootness issue,
7  with respect to standing, I think that defendants' motion
8  misperceives what the injury is that has been alleged in that
9  plaintiff's primary injury is not denial of any specific
10 contract, it is the heightened barrier that is established
11 under the race-based presumption; whereas, if Mr. Hierholzer
12 identified as any of the other races listed in the
13 presumption, he would not have to make a separate showing of
14 social disadvantage, but because he doesn't qualify under the
15 presumption, there is that additional barrier that he -- that
16 causes him injury.
17       The cause of that injury is the presumption.  And I
18 should mention, with respect to the mootness issue, the
19 regulation containing the presumption is still in force.  SBA
20 has not rescinded that regulation, and it continues to, you
21 know, provide the injury, the harm that we've sought to
22 remedy here.
23       The -- that remedy would be -- or, I'm sorry, that
24 injury would be redressed through an order enjoining use of
25 the presumption.

1       So unless the Court has any other questions on
2  standing...
3       THE COURT: Well, you know standing is the first
4  barrier that you always have to overcome before you even get
5  to these other issues about the Administrative Procedures Act
6  and the authority to even raise the issue of setting up
7  criteria using rebuttable presumption.
8       I think the Court in *Ultima* certainly wiped away any
9  suggestion that the SBA didn't have authority to try to
10 implement what Congress has suggested.  Congress is the one
11 that placed emphasis on looking at those races and people who
12 had been disadvantaged.
13      So the SBA was right in line with what Congress had
14 in the legislative history about what they were trying to do.
15 The question came down to whether they were improperly
16 applying the standard that they set up.  So I don't know
17 whether there is a whole lot of argument about whether it's
18 an impermissible act on the SBA's part to be trying to come
19 up with some presumption to address the issues Congress has
20 set out in the legislation.
21      In other words, I think your argument on violating
22 the APA is just not that persuasive to the Court.
23      MR. ROPER:  The APA, you said?
24      THE COURT:  APA, the Administrative Procedures Act.
25      MR. ROPER:  Well, Your Honor, the defendants have

actually not sought to dismiss our Administrative Procedure Act claims. They've sought to dismiss the equal protection claims, and they've sought to dismiss the nondelegation doctrine claim, but with respect to the APA claims, if plaintiffs have standing, then those should proceed.

THE COURT: The funny thing about it is, the Court looks at everything the parties don't look at, and a lot of the times, it doesn't matter that you could look at it, the Court has to look at it and decide whether it adds any value, any substance, no matter what you do as parties.

MR. ROPER: Well, I do think that the *Ultima* case is significant, and I think it does support plaintiffs' standing in this case. The Court in *Ultima* did consider the standing issue and concluded that the plaintiff there had standing.

THE COURT: And the Court differs with what the Court did there, I can tell you right now, on the issue of standing.

MR. ROPER: I think it also supports the fact that plaintiffs in this case have stated a plausible claim under the Equal Protection Clause. I don't think that defendants disagree that the case raises the issue of strict scrutiny because of the race-based presumption, and we believe that plaintiffs have stated a plausible claim that it does violate strict scrutiny, and so those claims should be able to proceed.

1               THE COURT:  Okay.  Thank you, sir.
2               MR. ROPER:  Unless the Court has any further
3    questions, we would ask the Motion to Dismiss be denied in
4    its entirety.  Thank you.
5               THE COURT:  Anything else?
6               MR. BRANIFF:  Judge, just to distinguish the
7    standing from *Ultima*, Your Honor, this case -- the plaintiffs
8    in the two cases are dramatically different.  In the *Ultima*
9    case, the individual who brought the suit in that case had
10   actual contracts that she actually identified that she had
11   been performing on, which on some of them options weren't
12   exercised and, instead, those actual contracts were placed in
13   the 8(a) program.  That's how the Court arrived at standing
14   in that matter.
15              Here, by contrast, plaintiff has actually applied to
16   the 8(a) program under the new current standard, the
17   social-disadvantaged standard, and been denied.  So in terms
18   of redressability, the presumption has played no role in the
19   denial of their application, would play no role now, so the
20   redressability argument would be completely different, novel,
21   and easily viewed by the Court that there's just simply
22   nothing left to do for this plaintiff.
23              THE COURT:  Okay, counsel.  The Court understands
24   your argument.  The Court understands, also, the impact of
25   *Ultima*, if any.  The Court will consider it.  The Court will

```
 1   be in touch with an opinion in due season.  Due season means
 2   reasonably.
 3          Thank you very much for your argument.  The Court
 4   will be adjourned.
 5          (Proceedings adjourned at 11:26 a.m.)
 6
 7                          CERTIFICATION
 8
 9      I certify that the foregoing is a correct transcript
10   from the record of proceedings in the above-entitled matter.
11
12
13             _____/s/_____
14                       Carol L. Naughton
15                       March 14, 2024
```

Carol L. Naughton, Official Court Reporter